Argued and submitted May 15, 2000, decision of Court of Appeals affirmed in part and reversed part; order of Employment Appeals Board affirmed October 24, 2002

# NEWPORT CHURCH OF THE NAZARENE,
an Oregon nonprofit corporation,
*Petitioner on Review /*
*Respondent on Review,*

*v.*

## Gordon R. HENSLEY,
*Respondent on Review,*

*and*

## EMPLOYMENT DEPARTMENT,
*Respondent on Review /*
*Petitioner on Review.*

(EAB No. 97-AB-2014; CA A99663; SC S46621, S46769)

56 P3d 386

Kelly E. Ford, Beaverton, argued the cause and filed the petition for review, briefs, and additional authorities for petitioner on review/respondent on review Newport Church of the Nazarene in S46621, waived filing and argument in S46769. With him on the briefs was Gregory S. Baylor, *pro hac vice*, Virginia.

Paul R. Meyer, Portland, argued the cause for respondent on review Gordon R. Hensley. With him on the responses and briefs was Charles F. Hinkle, ACLU Foundation of Oregon, Inc., Portland. Also on the brief in S46621 was Scott Garland, ACLU Foundation of Oregon, Inc., Portland.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause and filed the briefs and additional authorities for respondent on review/petitioner on review Employment Department. Christine A. Chute, Assistant Attorney General filed the petition for review. Also on the petition, briefs, and additional authorities were Hardy

Myers, Attorney General and Michael D. Reynolds, Solicitor General.

Kelly W. G. Clark, O'Donnell & Clark, LLP, Portland, and Richard G. Wilkins and Brent E. Rychener, Holme Roberts & Owen LLP, Colorado, filed the brief of *amici curiae* for The Christian & Missionary Alliance, Council on Religious Freedom, General Conference of Seventh-Day Adventist Church, General Council on Finance and Administration of the United Methodist Church, International Church of the Foursquare Gospel, National Association of Evangelicals, Oregon District Assemblies of God, Presbyterian Church (U.S.A.), and the Presbytery of Cascades.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, and Riggs, Justices.**

CARSON, C. J.

---

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case. Kulongoski, J., resigned June 14, 2001, and did not participate in the consideration or decision of this case. De Muniz and Balmer, JJ., did not participate in the consideration or decision of this case.

## CARSON, C. J.

This case presents two issues for review. The first is whether claimant, formerly a youth minister for the Newport Church of the Nazarene (church), is entitled to unemployment compensation benefits. The second, which arises only if claimant prevails on the first issue, is whether he is entitled to interest on the benefits award. The Employment Appeals Board (board) of the Oregon Employment Department (department) awarded claimant benefits, but not attorney fees or interest.

The church sought judicial review of the board's order, arguing, among other things, that the inclusion of ministers in the unemployment compensation program violates the church's right to autonomy under the First Amendment to the United States Constitution. Claimant also sought judicial review, challenging the board's denial of his request for attorney fees and interest. In addition, claimant contended that any exemption of ministers from the unemployment compensation program violates Article I, sections 2, 3, and 20, of the Oregon Constitution. The Court of Appeals affirmed the board's award of unemployment compensation benefits and denial of attorney fees, but reversed the board's denial of interest on the award. *Newport Church of the Nazarene v. Hensley*, 161 Or App 12, 983 P2d 1072 (1999).

The church and the department both petitioned for review in this court. The church challenged the Court of Appeals' decision respecting claimant's entitlement to benefits, and the department challenged the Court of Appeals' decision respecting claimant's entitlement to interest on those benefits. We allowed both petitions for review. For the reasons that follow, we reverse that part of the Court of Appeals' decision that allowed interest and otherwise affirm the Court of Appeals decision and the board's order.[1]

---

[1] As respondent on review, claimant reiterated his arguments respecting the board's award of unemployment compensation benefits and denial of interest. Claimant, however, did not petition this court to review the Court of Appeals' affirmance of the board's denial of his request for attorney fees. Consequently, the attorney fees issue is not before us on review.

The relevant historical facts are undisputed. Claimant began working for the church in October 1993 as a youth minister. Approximately eight months later, the church discharged claimant for misconduct that was not connected with claimant's work. In September 1994, claimant filed a claim for unemployment compensation benefits and commenced what became a lengthy process of administrative and judicial review, certain aspects of which we discuss in greater detail below.

To better frame the procedural history and the parties' arguments, we begin with a brief discussion of the backdrop of state and federal law against which this case arose. In 1935, in response to rampant unemployment associated with the Great Depression, Congress established an unemployment compensation program by imposing a federal payroll tax upon employers. To induce states to maintain their own unemployment compensation programs, however, Congress also provided that employers could offset as much as 90 percent of the federal tax by paying into a qualified state unemployment compensation program. To qualify, a state unemployment compensation program must not exempt more workers from coverage than are exempt under the federal program. *Newport Church*, 161 Or App at 15-16 n 3; *see also* 26 USC §§ 3301 to 3311 (2000) (setting out, among other things, statutory requirements that state's unemployment tax program must meet to qualify for federal tax credits). Shortly after the enactment of the federal payroll tax, every state adopted qualifying programs. *See generally Salem College & Academy, Inc. v. Emp. Div.*, 298 Or 471, 476-77, 695 P2d 25 (1985); *Steward Machine Co. v. Davis*, 301 US 548, 574-78, 57 S Ct 883, 81 L Ed 1279 (1937) (both describing federal program).

In Oregon, the department is the agency responsible for "[a]dminister[ing] the unemployment insurance laws of this state to support Oregonians during periods of unemployment." ORS 657.601(1). In simple terms, those laws provide for the payment of unemployment compensation benefits from the state Unemployment Compensation Trust Fund (fund) to eligible individuals. Under ORS 657.505, unless exempt, every employer must pay into the fund. An employer is

"any employing unit which employs one or more individuals in an employment subject to this chapter in each of 18 separate weeks during any calendar year, or in which its total payroll during any calendar quarter amounts to $225 or more."

ORS 657.025(1). An employee is

"any person * * * employed for remuneration or under any contract of hire, written or oral, express or implied, by an employer subject to this chapter * * *."

ORS 657.015. Employment is defined as "service for an employer * * * performed for remuneration or under any contract of hire, written or oral, express or implied." ORS 657.030(1).

When a claimant applies for unemployment compensation benefits, the department examines the claim and decides whether to allow or deny it. ORS 657.266 - 657.267. In making that determination, the department decides, among other things, whether the claimant has worked for an employer subject to ORS chapter 657 and investigates whether the reason for the claimant's unemployment does or does not disqualify the claimant from unemployment benefits. ORS 657.176.

ORS 657.072 excludes certain activities from the definition of employment, thereby excluding certain types of employers from the requirements of ORS chapter 657. ORS 657.072 provides, in part:

"(1) 'Employment' does not include service performed:

"(a) In the employ of:

"(A) A church or convention or association of churches; or

"(B) An organization which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches;

"(b) By a duly ordained, commissioned or licensed minister of a church in the exercise of ministry or a member of a religious order in the exercise of duties required by such order * * *."

Those statutory provisions correspond to provisions in the federal statute, which now is known as the Federal Unemployment Tax Act (FUTA), 26 USC § 3309(b)(1) (2000).[2]

This court has decided two cases under the Oregon Constitution involving the validity of ORS 657.072(1)*(a)*, commonly known as the "church exemption." *See Employment Div. v. Rogue Valley Youth for Christ*, 307 Or 490, 493-97, 770 P2d 588 (1989) (involving religious organizations); *Salem College*, 298 Or at 495 (involving religious schools). In each case, this court held that neither association in question qualified for the exemption under ORS 657.072(1)(a), but that, in limiting the exemption from the unemployment compensation program to "churches," as opposed to all religious organizations, the statute violated the principle of "equality among pluralistic faiths * * * embodied in the Oregon Constitution's guarantees of religious freedom." *Salem College*, 298 Or at 495; *see also Rogue Valley*, 307 Or at 496-97 (quoting *Salem College*). We discuss those decisions at greater length later in this opinion.

After this court decided *Salem College* and *Rogue Valley*, the department became concerned that ORS 657.072(1)*(b)*, commonly known as the "ministerial exemption," also violated the Oregon Constitution. Consequently, the department promulgated OAR 471-31-090(1) (1989), which broadened the "ministerial exemption" under ORS 657.072(1)(b) from including only ministers licensed by "churches" to also including ministers licensed by "religious organization[s]."

Thereafter, and, indeed, during the pendency and as a result of claimant's case, the United States Department of Labor informed the department that Oregon's unemployment statutes failed to comply with FUTA. According to the Department of Labor, the "ministerial exemption," as OAR 471-31-090(1)(a) (1989) redefined that category, was too broad, because it exempted ministers licensed or ordained by

---

[2] In 1997, Congress added to the exemption in 26 USC section 3309(b)(1) "service performed * * * in the employ of * * * an elementary or secondary school [that, among other things,] is operated primarily for religious purposes * * *." Pub L 105-33, § 5407, 111 Stat 605 (1997).

*"religious organization[s],"* while FUTA limited that exemption to ministers licensed or ordained by only *"churches."* 26 USC § 3309(b)(1) (1988) (emphasis added). Because noncompliance meant that Oregon would lose the FUTA tax benefit, the department responded by promulgating a new rule, OAR 471-031-0090 (1996),[3] that superseded the ministerial exemption under ORS 657.072(1)(b) and brought all ministers, regardless of affiliation, within mandatory unemployment compensation coverage. It is the validity of that rule that lies at the heart of this case.

■     The church contends that ORS 657.072(1)(b) properly exempts ministers from the state unemployment compensation program and, therefore, that OAR 471-031-0091 (1996), essentially overruling that statutory directive, is invalid. Claimant and the department, however, contend that the statutory exemption is invalid under Article I, sections 2, 3, and 20, of the Oregon Constitution,[4] as this court previously has interpreted those provisions in *Salem College* and *Rogue Valley*. The church responds that, even if the statutory exemption for ministers is invalid under the Oregon Constitution, the state is prohibited from subjecting ministers of churches to the unemployment compensation program under the First Amendment to the United States Constitution.[5] In response to that argument, claimant and the department assert that the First Amendment does not exempt ministers of churches from a generally applicable law, such as

---

[3] OAR 471-031-0090 (1996) provided:

"Notwithstanding ORS 657.072, the term 'employment' as used in ORS Chapter 657 includes service performed in the employ of a church or other non-profit religious organization including service performed by a minister of a church or by a member of a religious order."

[4] Article I, section 2, provides: "All men shall be secure in the Natural right, to worship Almighty God according to the dictates of their own consciences."

Article I, section 3, provides: "No law shall in any case whatever control the free exercise, and enjoyment of relegeous (sic) opinions, or interfere with the rights of conscience."

Article I, section 20, provides: "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

[5] The First Amendment provides, in part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" The First Amendment applies to the states through the Fourteenth Amendment to the United States Constitution. *See Fidanque v. Oregon Govt. Standards and Practices*, 328 Or 1, 3 n 2, 969 P2d 376 (1998) (so noting).

the unemployment compensation program.[6] We proceed to our discussion of the merits of those arguments, beginning with the Oregon Constitution.

As noted, claimant and the department argue that ORS 657.072(1)(b) is unconstitutional under Article I, sections 2, 3, and 20, of the Oregon Constitution because the statute distinguishes between church and nonchurch ministers. They base that position upon this court's earlier case law holding that ORS 657.072(1)(a), the "church exemption," violates those constitutional provisions. The church responds that, properly construed, subsection (b) of ORS 657.072(1)—unlike subsection (a)—does not present any unconstitutional distinction between church and nonchurch ministers. Alternatively, the church argues that any such distinction is not of constitutional significance because both churches and non-churches can hire church-licensed ministers.

Because it is the focus of the parties' arguments, and because, as explained below, it is dispositive of those arguments, we turn to this court's case law concerning the "church exemption" set out in ORS 657.072(1)(a). In *Salem College*, this court construed that statute as it applied to a Christian school and concluded:

> "The legislature could not constitutionally exclude from unemployment compensation coverage religious schools and their employees if they are controlled or principally supported by organizations described as 'churches' and extend coverage to otherwise similar religious schools operated by religious organizations that are not 'churches.' The distinction contravenes the equality among pluralistic faiths and kinds of religious organizations embodied in the Oregon Constitution's guarantees of religious freedom."

298 Or at 495. This court then held that the distinction violated Article I, sections 2, 3, and 20, of the Oregon Constitution. *Id.* at 490.

Later, in *Rogue Valley*, 307 Or 490, this court again construed ORS 657.072(1)(a)—in that case, as it applied to a

---

[6] Claimant also asserts that the church has not preserved its constitutional arguments. We disagree, for the reasons set out in the Court of Appeals' opinion. *Newport Church*, 161 Or App at 20.

church-supported youth organization. Acknowledging the close relationship between ORS 657.072(1)(a) and FUTA, this court held that the statutory scheme violated the Oregon Constitution as interpreted in *Salem College*:

> "The core problem involves the definition of the word 'church.' Defining 'church' too narrowly—including, for example, only hierarchical churches such as the Roman Catholic Church,—might comply with FUTA, but it would violate the Oregon Constitution because the protections of the Oregon Constitution extend to worship even outside organized churches. On the other hand, if 'church' is defined too broadly, organizations would be exempted from the unemployment tax when FUTA requires that they be included.

> "It may be possible to expound a judicial test for 'church' consistent with both the intent of the Oregon legislature and with FUTA. Any such definition, however, would still face the problem discussed in *Salem College*—that is, Oregon would still be put in the position of treating unequally what, at least for Oregon constitutional purposes, are religious organizations. Creating such a 'distinction contravenes the equality among pluralistic faiths and kinds of religious organizations embodied in the Oregon Constitution's guarantees of religious freedom.' Therefore, we hold that Oregon must treat all religious organizations similarly whether or not they would qualify as churches under FUTA * * *."

*Rogue Valley*, 307 Or at 496-97 (citations omitted).

■■ In sum, the case law demonstrates that, under Article I, sections 2, 3, and 20, of the Oregon Constitution, it is impermissible for a statute to draw a distinction between churches and nonchurch religious organizations. ORS 657.072(1)(b) draws such a distinction, in that it exempts from unemployment coverage "duly ordained, commissioned or licensed minister[s] of * * * church[es]," but does not exempt other religious leaders not ordained by churches, in determining who is entitled to unemployment compensation benefits. That distinction, like the distinction in ORS 657.072(1)(a) that this court concluded was constitutionally infirm in *Salem College* and *Rogue Valley*, violates Article I, sections 2, 3, and 20, of the Oregon Constitution.

As noted above, the church disagrees with the conclusion that ORS 657.072(1)(b) presents any sort of unconstitutional distinction. That is so, the church argues, because there cannot be a minister of a religious organization; rather, there are only church ministers. The church alternatively argues that any distinction between church and nonchurch ministers would not rise to a level of constitutional significance because both churches and nonchurches can hire church-licensed ministers. We are not persuaded by those arguments. As the Court of Appeals correctly noted, "[i]t is the distinction based on licensing by a 'church' that matters * * *." *Newport Church*, 161 Or App at 19.

■ Having concluded that the distinction set out in ORS 657.072(1)(b) violates several provisions of the Oregon Constitution, the next issue before us is whether to invalidate that statute or to construe it—consistent with OAR 471-031-0090 (1996)—so as to include ministers not only of churches, but also of other religious organizations in Oregon's unemployment compensation program. In *Salem College* and *Rogue Valley*, this court chose the latter approach, reasoning that the legislature would have so intended, to avoid any state constitutional violation. *See Rogue Valley*, 307 Or at 497 ("Although the answer is by no means obvious, we believe that the legislature would have chosen to include all religious organizations in the unemployment compensation program."); *Salem College*, 298 Or at 494 ("In a choice between exempting independent religious schools and losing conformity with FUTA or maintaining that conformity and extending coverage to all religious schools, the legislature in 1977 [when it enacted ORS 657.072(1)(a)] surely would have chosen the latter course."). In accordance with that precedent, we similarly construe ORS 657.072(1)(b) so as to include ministers of both churches and other religious organizations in Oregon's unemployment compensation program.

Having concluded that ministers of churches are included within Oregon's unemployment compensation program, we proceed to consider the church's argument that, in construing the statutory scheme in that manner, the program now effects a violation of the United States Constitution.

As to the United States Constitution, the church contends that subjecting a minister of a church to the state unemployment compensation program violates the First Amendment because, during an investigation into whether a minister claimant is entitled to benefits, the state necessarily must investigate the circumstances under which the church had terminated the minister's employment. That, the church contends, would intrude impermissibly into internal church affairs.

The premise of the church's argument is the church autonomy doctrine, which, it asserts, stems from both the Free Exercise Clause and the Establishment Clause of the First Amendment. Relying upon that doctrine, the church argues that government is not permitted to interfere in church decisions regarding, for example, the choice of its leaders. *See, e.g., Serbian Orthodox Diocese v. Milivojevich*, 426 US 696, 96 S Ct 2372, 49 L Ed 2d 151 (1976) (decision of church tribunal to defrock bishop not subject to judicial review); *Rayburn v. General Conf. of Seventh-Day Adventists*, 772 F2d 1164 (4th Cir 1985) (church decision not to hire woman as pastor insulated from review for discrimination under Title VII).

■    Recent federal cases have identified the Free Exercise Clause as the basis for the autonomy doctrine, because freedom of worship is closely related to the selection of officials to lead that worship. *See, e.g., Young v. N. Ill. Conf. Of United Methodist Church*, 21 F3d 184, 187 (7th Cir 1994) ("the Free Exercise Clause of the First Amendment forbids a review of a church's procedures when it makes employment decisions affecting its clergy"); *Rayburn*, 772 F2d at 1168 ("Any attempt by government to restrict a church's free choice of its leaders thus constitutes a burden on the church's free exercise rights."). In *Employment Div., Ore. Depart. of Human Res. v. Smith*, 494 US 872, 110 S Ct 1595, 108 L Ed 2d 876 (1990), the United States Supreme Court set out a test for free exercise challenges that do not combine First Amendment religion claims with other constitutional claims. The Court stated that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id.* at 879.

The applicability of *Smith* in the context of church autonomy is not clear. *See, e.g., E.E.O.C. v. Roman Catholic Diocese of Raleigh, NC*, 213 F3d 795, 800 n * (4th Cir 2000) (noting agreement among federal circuits that *Smith* did not affect church autonomy doctrine in context of Title VII claims). Were we to apply that standard here, however, we would conclude that the unemployment compensation program is a valid and neutral law of general applicability, from which the church and its ministers are not exempt upon the ground that the church is a religious organization. *Cf. Salem College*, 298 Or at 487 (noting that administrative and clerical burdens of program "are not different in principle from a host of other secular regulatory requirements such as health inspections of cafeteria workers or kitchens, safety inspection of school busses, and licensing of drivers").

Alternatively, under a more traditional free exercise analysis, we must examine whether the state regulation—here, unemployment coverage for ministers—imposes a burden upon religion. *United States v. Lee*, 455 US 252, 256-57, 102 S Ct 1051, 71 L Ed 2d 127 (1982). If such a burden exists, then an overriding state interest may justify the burden if it is essential to accomplish the state interest. *Id.*

In the context of the state's inquiry whether to grant unemployment compensation benefits to a discharged minister, the alleged burden is that the church might have to disclose the circumstances of the termination. Once a discharged worker has met certain threshold criteria, the department must inquire whether the circumstances of the claimant's termination disqualified him or her for benefits due to, for example, termination for misconduct, voluntary separation without good cause, or excessive absence or tardiness because of substance abuse. ORS 657.176; *see also* OAR 471-030-0038(3)(a) (1999) (misconduct is "willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee" or "[a]n act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest"); OAR 471-030-0038(3)(b) (1999) (following are not misconduct: "[i]solated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience").

Conceivably, such an inquiry might burden the church, because it might require the church to disclose what otherwise would be an internal matter, namely, the selection, performance, and retention of its religious leaders. As the church argues, requiring it to disclose and justify its reasons for firing a religious leader might affect the church's decision whether to terminate that leader's employment at all, thus burdening the free exercise of its faith. Indeed, as the church further contends, the economic burden of having to pay unemployment benefits also might cause the church to refrain from firing a minister who otherwise might be terminated for that minister's disagreement with the church on doctrinal issues.[7]

On the other hand, the state interest in providing unemployment compensation is one that this court previously identified and explained in *Rogue Valley*:

> "There are few governmental tasks as important as providing for the economic security of its citizens. A strong unemployment compensation system plays a significant role in providing this security. Given the existence of FUTA, any state's unemployment tax must, as a practical matter, comply with FUTA's requirements or the state's employers would face a double tax. Such a double tax would, in turn, create a very undesirable business climate in the state. This, combined with Oregon's constitutional interest in treating all religious organizations equally, creates an overriding state interest in applying the unemployment payroll taxes to all religious organizations."

307 Or at 499.

As noted, in determining whether a requirement of this state's unemployment compensation program excessively burdens the free exercise of religion under the First Amendment, we must compare the interests of the state with

---

[7] The basis for our statement earlier in this opinion that claimant's termination here was not for misconduct lies in the fact that the board earlier so concluded, and the church did not challenge that determination. Later, the church sought to reopen the record to introduce evidence of misconduct, but the motion was denied. *Newport Church*, 161 Or App at 18 n 7. Accordingly, as the case comes to us, the only issue is whether the potential of an inquiry at all, and not any particular inquiry, infringes impermissibly on church autonomy.

the burdens upon the church. *Lee*, 455 US at 256-57. The burden upon the church, we conclude, almost always will be small in comparison to the state interest. Under the statutory scheme, the state does not dictate to the church how it may worship or who it may hire and fire as its leaders. Instead, to administer the state unemployment compensation law, the state must determine only why a person was terminated. The church autonomy doctrine might insulate the church from the dictates of a secular court regarding liturgy and leadership, but it does not permit a church, as a general matter, to cloak its decisions and actions in secrecy when the law requires compliance with the requirements of civil law. *See United Methodist Church v. Superior Court*, 439 US 1369, 1373, 99 S Ct 36, 58 L Ed 2d 77 (1978) (Rehnquist, Circuit Justice) (principle of church autonomy not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization, in which fraud, breach of contract, and statutory violations are alleged); *Bollard v. California Province of Soc. of Jesus*, 196 F3d 940 (9th Cir 1999) (church autonomy doctrine does not shield church from former novice's sexual harassment claim). We, therefore, conclude that church's broad-based argument under the Free Exercise Clause fails.[8]

As noted, the church also asserts that the autonomy doctrine has its basis in the Establishment Clause of the First Amendment. However, as explained above, the Supreme Court has concluded that the doctrine has its basis in the Free Exercise Clause, not the Establishment Clause. We therefore reject the church's Establishment Clause argument without further discussion.

---

[8] That is not to say that an impermissible interference with church autonomy never can occur in the unemployment compensation context. In a particular instance, under particular facts, the department's inquiry might cross the constitutional line. As this court noted in *Salem College*:

"This eventuality can adequately be dealt with if and when it happens; we have no reason to believe that discharges of school employees over matters of religious doctrine are so frequent as to require the employer's entire exemption from the unemployment compensation system on that account."

298 Or at 487. Although doctrinal questions are more likely to emerge in respect of the termination of ministers, as opposed to school employees, the fact remains that challenges can be resolved on a case-by-case basis. However, as noted, this case does not present an as-applied challenge.

In sum, we conclude that, in purporting to draw a distinction between church ministers and leaders of other religious organizations, ORS 657.072(1)(b) violates Article I, sections 2, 3, and 20, of the Oregon Constitution. In light of that conclusion, and in accordance with *Salem College* and *Rogue Valley*, we construe the statute consistently with OAR 471-031-0090 (1996) to include both ministers and leaders of other religious organizations in Oregon's unemployment compensation program. Such an application of the statutory scheme does not violate the Free Exercise Clause of the First Amendment to the United States Constitution, because the burdens placed upon the church are essential to accomplishing the overriding state interest in providing unemployment compensation benefits.

■■ We now turn to the issue raised in the department's petition for review, that is, whether claimant statutorily is entitled to an award of interest on his unemployment compensation benefits. In this court, the department primarily contends that the doctrine of sovereign immunity shields the state from claimant's interest claim. In response to that contention, claimant asserts that, because the department did not raise sovereign immunity as a theory in support of its assertion that the relevant statutes do not permit the recovery of interest in this circumstance, the department has waived that theory. We disagree.

■■ The department argued below that ORS 82.010(1), Oregon's general interest statute, does not apply to the payment of unemployment compensation benefits, although for reasons different from the reason upon which the department primarily now relies. It remains, however, that the statute properly is in play, and its meaning is for this court to resolve. In doing so, this court may be aided by the arguments of counsel as to the legislature's intent, but it is not bound by them. *See, e.g., State v. Hitz*, 307 Or 183, 187-88, 766 P2d 373 (1988); *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) (to that effect). In any given instance, the court might ascertain legislative intent in light of particular arguments that counsel (1) made consistently throughout the proceedings, (2) made for the first time on appeal or review, or (3) never made at all—so long as the issue of the meaning of

the statute has been preserved. We therefore proceed to consider whether the legislature intended, based upon considerations of sovereign immunity or otherwise, to subject the state to claims of interest on unemployment compensation benefits.

ORS 82.010(1) provides, in part:

> "The rate of interest for the following transactions, if the parties have not otherwise agreed to a rate of interest, is nine percent per annum and is payable on:
>
> "(a)  All moneys after they become due[.]"

ORS 82.010(1) is a general rule regarding the payment of interest. We note that ORS chapter 657, the unemployment compensation statute, makes no mention of the payment of interest to a claimant under circumstances such as this. We also have not found, neither have the parties suggested, that the legislature anywhere explicitly has provided for awards of interest on unemployment compensation benefits.

Only clear expression by the legislature waives the state's sovereign immunity. *Hunter v. City of Eugene*, 309 Or 298, 303, 787 P2d 881 (1990); *Rapp v. Multnomah County*, 77 Or 607, 609-10, 152 P 243 (1915). This court recognized the state's immunity from awards of interest under the general interest statute in *Seton v. Hoyt*, 34 Or 266, 55 P 967 (1899). In that case, the statute before the court was nearly identical to ORS 82.010(1)(a).[9] Although the doctrine of sovereign immunity did not apply to the claim at issue in *Seton*, the court observed:

> " 'Interest, when not stipulated for by contract, or authorized by statute, is allowed by the courts as damages for the detention of money, or of property, or of compensation, to which the plaintiff is entitled; and, as has been settled upon grounds of public convenience, is not to be awarded against a sovereign government, unless its consent to pay interest has been manifested by an act of the legislature, or by a lawful contract of the executive officers.' The rule applies as well to a sovereign state as to the national government."

---

[9] The statute at issue provided: "The rate of interest in this state shall be eight per centum per annum, and no more, on all moneys after the same become due." The Codes and General Laws of Oregon, ch L, title I, § 3587 (Hill 1887).

*Id.* at 272-73 (quoting *United States v. North Carolina*, 136 US 211, 216, 10 S Ct 920, 34 L Ed 336 (1889)). In addition, the court specifically added that "the state [is not] within the purview of a general law regulating the rate of interest upon money due or to become due, and this goes upon the ground that a sovereign is not bound by the words of a statute unless it is expressly named." *Id.* at 273. *See also generally Pendell v. Dept. of Rev.*, 315 Or 608, 612, 847 P2d 846 (1993) (stating, respecting payment of interest on tax refund, that "[t]he state is not required to pay interest unless self-imposed by statute"); *NW. Ice & Cold Stor. v. Multnomah Co.*, 228 Or 507, 516-17, 365 P2d 876 (1961) (quoting *Seton* with approval).

Claimant cites several cases that he claims run contrary to *Seton*. In *North Pac. Const. Co. v. Wallowa County*, 119 Or 565, 249 P 1100 (1926), the plaintiff obtained an award of interest against a county on damages awarded for an underpaid highway project. *North Pacific*, however, mentioned neither sovereign immunity nor *Seton*, and it appears that the county did not raise the defense in that case. Further, in *Eldon et al. v. Chandler et al.*, 202 Or 407, 275 P2d 748 (1954), the court relied upon *North Pacific* in awarding interest against the state and also relied upon *Public Market Co. v. Portland*, 171 Or 522, 621, 130 P2d 624, 138 P2d 916 (1943). *Public Market*, however, was an action against a city, and cities are not immune from the general interest statute. *See Shipley v. Hacheney*, 34 Or 303, 55 P 971 (1899) (cities, unlike counties, are not extensions of state and do not enjoy state's immunity from interest). Thus, *North Pacific* and *Eldon* provide questionable guidance in this case.

In short, we conclude that the legislature did not intend, either through the general interest statute or through the statute pertaining to the unemployment compensation program, that the state pay interest on unemployment compensation benefits. The Court of Appeals therefore erred in holding that claimant was entitled to an award of interest.

The decision of the Court of Appeals is affirmed in part and reversed in part. The order of the Employment Appeals Board is affirmed.