Argued and submitted May 11, 2005, decision of Court of Appeals reversed; judgment of circuit court reversed and case remanded to circuit court for further proceedings April 13, 2006

David YOUNG,
*Petitioner on Review,*
*and*

Larry D. CONN,
Leonard J. Drung, Jess Eastman, Debra E. Fery,
Bruce L. Fochtman, Lois G. Harris, Cheryl L. Ho,
Lloyd Horsley, Wilfred Hudson, Mark A. Jones,
Robert Jordan, David C. Judkins, David Kunz,
Gordan J. Larson, Margaret J. Loftis, Judy Murray,
Scott R. Proctor, Richard Reiter, Helen Satterlee,
Ernest Schmidt, Marjorie J. West, James C. Wilson,
Randal Windsor and Michael D. Woodward,
*Petitioners on Review,*

*v.*

STATE OF OREGON,
*Respondent on Review.*

(CC 97C-10933; CA A114099 (Control))

David YOUNG,
Al Chandler, Mike Reinecke, Karen Eastman (Memory),
*Petitioners on Review,*

*v.*

STATE OF OREGON,
*Respondent on Review.*

(CA A113141)

David YOUNG,
*Petitioner on Review,*

*v.*

STATE OF OREGON,
*Respondent on Review.*

(CA A113645; SC S51786)

133 P3d 915

John E. Hoag, Eugene, argued the cause and filed the briefs for petitioners on review. With him on the petition for review was David Snyder, Portland.

Brendan C. Dunn, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Paul Breed, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association. With him on the brief was Beth Creighton, Portland.

Norman D. Malbin, Portland, filed the briefs for *amicus curiae* International Brotherhood of Electrical Workers, Local 48.

Before Carson, Chief Justice,** and Gillette, Durham, and Riggs, Justices.***

RIGGS, J.

** Chief Justice when case was argued.

*** De Muniz, Chief Justice when case was decided, Balmer, and Kistler, JJ., did not participate in the consideration or decision of this case.

## RIGGS, J.

In this case, we must determine whether a wage and hour statute, *former* ORS 279.340(1) (1995), *renumbered as* ORS 653.268(1) (2005), required the state to pay "white-collar employees"[1] one and one-half times their "regular rate" for overtime or whether that statute instead permitted the state to pay those employees one-half their regular rate for overtime (known as a "fluctuating hours" rate, which we explain below).[2] Plaintiffs are state white-collar employees whom the state customarily has treated as exempt from over-time compensation. However, due to a change in statutory law, plaintiffs successfully asserted that they were entitled to overtime compensation during a particular two-year period. *See Young v. State of Oregon*, 161 Or App 32, 983 P2d 1044, *rev den*, 329 Or 447 (1999) (*Young I*) (sustaining plaintiffs' legal theory). After the Court of Appeals concluded that plaintiffs were entitled to overtime compensation, the trial court on remand addressed the question of the extent to which the state was required to compensate plaintiffs for overtime. The trial court, applying *former* ORS 279.340(1), determined that plaintiffs were entitled to overtime compen-sation at a rate of one-half their regular rate. The trial court also concluded that plaintiffs, whose employment had termi-nated before the appellate judgment had issued in *Young I*, were not entitled to penalty wages because the state's deci-sion to treat them as exempt from overtime was not willful. Plaintiffs challenged both rulings on appeal, but the Court of

---

[1] Like the parties, we use the phrase "white-collar employees" generally to mean employees working in executive, administrative, supervisory, or professional settings.

[2] *Former* ORS 279.340(1) provided:

"Labor directly employed by any public employer as defined in ORS 243.650 shall be compensated, if budgeted funds for such purpose are available, for overtime worked in excess of 40 hours in any one week, at not less than one and one-half times the *regular rate* of such employment. If budgeted funds are not available for the payment of overtime, such overtime shall be allowed in com-pensatory time off at not less than time and a half for employment in excess of 40 hours in any one week."

(Emphasis added.)

Although the legislature renumbered *former* ORS 279.340 effective March 1, 2005, we use the former numbering and the 1995 version of that statute through-out the remainder of this opinion unless otherwise indicated.

Appeals largely agreed with the trial court. *Young v. State of Oregon*, 195 Or App 31, 96 P3d 1239 (2004) (*Young II*). We allowed plaintiffs' petition for review and now conclude that the trial court and the Court of Appeals erred, both in determining the proper rate of overtime compensation and in determining whether the state was obligated to pay penalty wages.

Prior to 1995, *former* ORS 279.340(1) (1993) required counties, municipalities, municipal corporations, and school districts, but not the state, to pay overtime compensation. *Former* ORS 279.340(1) (1993), *amended by* Or Laws 1998, ch 286, § 26, *renumbered as* ORS 653.268(1) (2005). However, *former* ORS 279.342(5) (1993), *renumbered as* ORS 653.269(5) (2005),[3] exempted from overtime all salaried white-collar employees of those specified public entities, that is, employees of counties, municipalities, and the like, who held "executive, administrative, supervisory or professional" employment.

In 1995, the legislature amended *former* ORS 279.340(1) (1993) so that it would apply to "any public employer," including the state. *Former* ORS 279.340 (1995). At that time, however, the legislature did not amend *former* ORS 279.342(5) (1993) to extend the white-collar exemption to the employees of the state. *See former* ORS 279.342(5)(a) (1995) (exempting only employees of "a county, municipality, municipal corporation, school district or subdivision" from overtime requirements for employees working in "executive, administrative, supervisory or professional" setting). During the following legislative session in 1997, the legislature amended *former* ORS 279.342(5) (1995) to extend the exemption to all public employees. *See former* ORS 279.342(5)(a) (1997) (exempting "any public employer" from overtime requirements for employees working in "executive, administrative, supervisory or professional" setting). However, for a two-year period, beginning when the 1995 amendment to *former* ORS 279.340(1) (1993) became effective and ending when the 1997 amendment to *former* ORS 279.342(5) (1995) became effective, *former* ORS 279.340(1) (1995) appeared

---

[3] We use the former numbering of that statute throughout the remainder of this opinion.

to entitle state white-collar employees to overtime compensation.

Plaintiffs, who were white-collar employees employed by the state in professional positions during the pertinent two-year period, filed an action against the state, seeking overtime compensation for overtime worked during that period. The state denied that it owed overtime compensation. Instead, it argued that, whatever the amendment to *former* ORS 279.340 (1993) may have provided, and however the wording to *former* ORS 279.342(5) (1993) may have gone unaltered, the 1995 legislature's clear intent was that the exemption for white-collar workers should include state workers. The legislature may have neglected to amend the statutes specifically to provide for that exemption, the state acknowledged, but the exemption nonetheless should apply. The trial court accepted that argument, but the Court of Appeals rejected it as contrary to the unambiguous wording of the applicable statutes as they existed between 1995 and 1997. *Young I*, 161 Or App at 36. The Court of Appeals therefore reversed the trial court's judgment and remanded the case to the trial court to assess plaintiffs' damages. *Id.* at 40.

As noted, the trial court determined on remand that the proper method for calculating plaintiffs' overtime compensation was the so-called "fluctuating hours" method. The trial court also concluded that plaintiffs who had terminated their employment before the Court of Appeals had issued its appellate judgment were not entitled to penalty wages because the state did not have notice that its interpretation of *former* ORS 279.340 was incorrect until that decision was final.

On appeal, the Court of Appeals agreed that the wording of *former* ORS 279.340(1) was consistent with the fluctuating-hours method of calculating overtime compensation. *Young II*, 195 Or App at 36-38. In addition, the Court of Appeals slightly modified but otherwise approved the trial court's decision regarding penalty wages. *Id.* at 41-47. We allowed plaintiffs' petition for review.

■ On review, the state argues in favor of the fluctuating-hours method of calculating overtime compensation. The assumption behind the fluctuating-hours method is the idea

that payment of a salaried employee's fixed salary compensates the employee for every hour actually worked. An employer calculates a salaried employee's "regular rate" by dividing the employee's weekly salary by the number of hours actually worked in a single week. Under the fluctuating-hours method the employer may satisfy the statutory "one and one-half" overtime requirement by paying the salaried employee an additional one-half of the employee's regular rate multiplied by the hours of overtime that the employee actually had worked. Plaintiffs, however, argue that the "fluctuating-hours" method is inconsistent with the plain text of *former* ORS 279.340(1) and that they should receive one and one-half their regular rate of pay for working overtime.

We begin our analysis with the statute, *former* ORS 279.340(1) (1995) (now ORS 653.268(1)), which has provided since 1995:

> "Labor directly employed by a public employer as defined in ORS 243.650 shall be compensated, if budgeted funds for such purpose are available, for overtime worked in excess of 40 hours in any one week, at not less than one and one-half times the *regular rate* of such employment. If budgeted funds are not available for the payment of overtime, such overtime shall be allowed in compensatory time off at not less than time and a half for employment in excess of 40 hours in any one week."

(Emphasis added.)

The key term in *former* ORS 279.340(1) is "regular rate." "Regular" means "NORMAL, STANDARD." *Webster's Third New Int'l Dictionary* 1913 (unabridged ed 2002). "Rate" means "a fixed relation (as of quantity, amount, or degree) between two things: ratio" and "a quantity, amount, or degree of something measured per unit of something else (as time)." *Webster's* at 1884. The phrase "regular rate," in this context, thus indicates a ratio or relationship that normally exists between two things—here, money and time. Most employees accept a standard rate of pay, a salary for an established or expected period of work time. *Former* ORS 279.340(1) assumes that that period of time is 40 hours in one

week and anticipates that the employee will receive a "regular rate" of pay for that 40-hour week, which means a rate of pay for a regular week of work that can be expressed as a certain number of dollars per hour. For example, if an employee receives $800 for a 40-hour workweek, the regular rate of pay is $20 per hour. The employee's expected workweek could be more or less—part-time, for example—in which case the regular rate still could be expressed as a function of hourly work, *viz.*, as a salary divided by the number of hours. In any event, *former* ORS 279.340(1) requires that "overtime worked in excess of 40 hours in any one week" must be compensated "at not less than one and one-half times the regular rate of such employment." One and one-half the regular rate means, based on the foregoing example, 1.5 times $20/hour equals $30/hour.

The foregoing is what the plain text of *former* ORS 279.340(1) indicates, once we give the terms of the statute their ordinary meaning. We therefore conclude that the fluctuating-hours method is inconsistent with the plain text of *former* ORS 279.340(1). The fluctuating-hours method seeks to reconcile two distinguishable compensation schemes: employment compensation on an hourly basis and employment compensation on a salaried basis. The fluctuating hours method begins with the assumption that payment of a salaried employee's fixed salary compensates the employee for every hour actually worked. That assumption ordinarily works for salaried professional employees. However, when *former* ORS 279.340(1) requires that employees be compensated for overtime, the assumption that underlies the fluctuating-hours method is qualified, if not undermined altogether. Without the support that that assumption provides, the rationale for the fluctuating-hours method collapses. For that reason, we reject the state's argument that the fluctuating-hours method is consistent with the text of *former* ORS 279.340(1). We conclude that the trial court and the Court of Appeals erred in determining the proper method of calculating overtime compensation under *former* ORS 279.340(1).

■       We turn to the question of statutory penalties. Under ORS 652.150(1), an employer is liable for penalty wages for nonpayment of compensation owed to terminated employees

only if such nonpayment is willful. Specifically, ORS 652.150(1) provides:

> "Except as provided in subsections (2) and (3) of this section, if an employer *willfully* fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145, then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced. However, * * * [i]n no case shall the penalty wages or compensation continue for more than 30 days from the due date[.]"

(Emphasis added.)

This court has determined the meaning of the term "willfully" in ORS 652.150(1) on prior occasions, and we apply it here. *State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998) (court considers case law construing statute in question at first level of statutory analysis). This court previously has indicated that "a bona fide belief that wages were not due would preclude a finding that the failure to pay was wilful." *Braddock v. Capfer*, 284 Or 237, 239, 586 P2d 340 (1978); *see also Hekker v. Sabre Construction Co.*, 265 Or 552, 561, 510 P2d 347 (1973) (defendant's failure to pay plaintiff commissions not willful based on bona fide belief that no commissions were due under employment agreement). As this court has observed, however, the word "willful" does not necessarily cast blame or implicate malice; it merely indicates that the act or omission was purposeful and not the product of inadvertence. *Sabin v. Willamette-Western Corp.*, 276 Or 1083, 1093, 557 P2d 1344 (1976) (citations omitted). Ultimately, the court must determine whether the state willfully failed to pay its employees when it was aware of its obligation to do so. *Taylor v. Werner Enterprises, Inc.*, 329 Or 461, 469, 988 P2d 384 (1999).

As *Young I* indicated, the meaning of the statutes that the legislature enacted in 1995 was unequivocally evident to anyone who could read them. The statutes at issue were available to the state executive branch, and the state therefore was fairly chargeable with knowledge of those statutes. *See Taylor*, 329 Or at 470 ("The question * * * is

whether [employer] had, or can be imputed to have had, a level of awareness of its obligation to pay plaintiff such that its failure to pay was 'willful.' "). We conclude that, once the legislature enacted the changes to *former* ORS 279.340(1) in 1995, the state could not assert a "bona fide belief" that it had no obligation to pay overtime to its white-collar employees. For the foregoing reasons, we conclude that eligible plaintiffs are entitled to penalty wages under ORS 652.150(1).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.