Argued and submitted November 15, 2007, affirmed July 9, petition for review allowed December 10, 2008 (345 Or 460)

David YOUNG,
*Plaintiff-Appellant,*
*and*

Al CHANDLER,
Mike Reinecke, Karen (Eastman) Memory,
Larry D. Conn, Leonard J. Drung, Jess Eastman,
Debra E. Fery, Bruce L. Fochtman, Lois G. Harris,
Cheryl L. Ho, Lloyd Horsley, Wilfred Hudson,
Mark A. Jones, Robert Jordan, David C. Judkins,
David Kunz, Gordan J. Larson, Margaret J. Loftis,
Judy Murray, Scott R. Proctor, Richard Reiter,
Helen Satterlee, Ernest Schmidt, Marjorie J. West,
James C. Wilson, Randal Windsor
and Michael D. Woodward,
*Claimants-Appellants,*

*v.*

STATE OF OREGON,
*Defendant-Respondent.*

Marion County Circuit Court
97C10933; A133123

188 P3d 476

John Hoag argued the cause for appellants. With him on the briefs was Snyder & Hoag, LLC.

Mary H. Williams, Solicitor General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Brendan C. Dunn, Assistant Attorney General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

### HASELTON, P. J.

There is only one issue in this case, which is before us for the third time: Are the plaintiff state employees entitled to interest on the difference between (1) the amounts of original judgments for overtime compensation, which were entered in 2001 and 2002, and (2) the amounts of supplemental recalculated judgments entered following the remand in *Young v. State of Oregon*, 340 Or 401, 133 P3d 915 (2006) (*Young III*), with that interest running from the date of the original judgments? The trial court rejected plaintiffs' asserted entitlement. As explained below, we conclude that the state has not waived sovereign immunity with respect to liability for such interest. Consequently, we affirm.

To give context to the present dispute, we briefly recount the history of the case to date. Plaintiffs brought this class action in 1997, seeking to recover unpaid overtime compensation for state managerial and executive employees, that is, state "white-collar" workers, under *former* ORS 279.340(1) (1995), *renumbered as* ORS 653.268(1) (2003).[1] That statute—which previously had required other public employers, including counties, municipalities, and municipal corporations, to pay overtime compensation—was amended in 1995 to also apply to the state. *See* Or Laws 1995, ch 286, § 26. The trial court rejected plaintiffs' claim, concluding that the overtime pay provisions of *former* ORS 279.340(1) did not apply to state white-collar workers.

In *Young v. State of Oregon,* 161 Or App 32, 983 P2d 1044 (1999) (*Young I*), we reversed that determination. In so holding, we concluded that, because the legislature did not also concurrently, in 1995, amend *former* ORS 279.342(5)(a)

---

[1] *Former* ORS 279.340(1) (1995) provided:

"Labor directly employed by a public employer as defined in ORS 243.650 shall be compensated, if budgeted funds for such purpose are available, for overtime worked in excess of 40 hours in any one week, at not less than one and one-half times the regular rate of such employment. If budgeted funds are not available for the payment of overtime, such overtime shall be allowed in compensatory time off at not less than time and a half for employment in excess of 40 hours in any one week."

ORS 243.650 (1995) defined "public employer" to include the state. Unless otherwise indicated, we refer to the 1995 versions of these statutes throughout this opinion.

(1993), *renumbered as* ORS 653.269(5)(a) (2005), which provided an exemption from the overtime pay provisions of ORS 279.340(1) for those employees of "a county, municipality, municipal corporation, school district or subdivision" who held "executive, administrative, supervisory or professional" positions, state white-collar workers were not exempt from the overtime pay provisions of *former* ORS 279.340(1). 161 Or App at 36-40.[2] Accordingly, we remanded the case for entry of judgment for plaintiff. *Id.* at 40.

On remand, the trial court certified the case as a class action and determined that the proper method of calculating plaintiffs' overtime compensation awards was according to the "fluctuating hours" method. *Young v. State of Oregon*, 195 Or App 31, 36, 396 P3d 1239 (2004) *(Young II)*.[3] The court also determined that the state did not act willfully in failing to pay overtime compensation to plaintiffs whose employment terminated before the issuance of the appellate judgment in *Young I*. *Young II*, 195 Or App at 41. However, with respect to plaintiffs whose employment terminated after the issuance of that judgment, the trial court determined that the state had acted willfully in failing to pay overtime compensation—and, thus, those employees were entitled to a penalty under ORS 652.150. *Id.* Finally, the trial court on remand following *Young I* concluded that the state

---

[2] In 1997, the legislature amended *former* ORS 279.342(5)(a) (1995) to extend the exemption to all public employees. *See former* ORS 279.342(5)(a) (1997) (exempting "a public employer" from overtime requirements for employees working in an "executive, administrative, supervisory or professional" setting). Thus, state white-collar employees were entitled to overtime compensation for the two-year period between the effective date of the 1995 amendment to *former* ORS 279.340(1) and the effective date of the 1997 amendment to *former* ORS 279.342(5)(a).

[3] In *Young II*, we explained that methodology as follows:

"[F]or fluctuating work weeks, the rule determines overtime compensation by dividing the number of hours actually worked each week into the salary for that week in order to determine the regular rate of pay for that week. The employee will receive one-half that rate for each hour worked in excess of 40. Because the regular work week will fluctuate from week to week, the regular hourly rate will also fluctuate and so will the rate of overtime compensation. The rule explains that the overtime compensation is one-half of the regular hourly rate, rather than one and one-half times that rate, because the salary itself constitutes compensation for all of the hours that the employee actually works."

195 Or App at 39.

was immune from any obligation to pay prejudgment interest on the unpaid overtime and penalties. *Young II*, 195 Or App at 36.

Plaintiffs again appealed to us. In our opinion in *Young II*, we largely agreed with the trial court, concluding that (1) the fluctuating-hours formula was the appropriate method for calculating overtime rates for employees with fluctuating work weeks, 195 Or App at 40; (2) the state was required to pay penalties under ORS 652.150(1),[4] albeit with respect to plaintiffs whose employment ended after the date of the appellate decision in *Young I*, rather than on or after the date of the appellate judgment as the trial court had concluded, *id.* at 47-48; and (3) the trial court had correctly refused to award interest on plaintiffs' claims because there was no express waiver of the state's sovereign immunity, *id.* at 51.

The Supreme Court in *Young III* reversed, in part. The court held that the fluctuating-hours method for determining overtime compensation was inconsistent with the plain text of *former* ORS 279.340(1). 340 Or at 408. The Supreme Court further held that the state was required to pay penalty wages under *former* ORS 652.150(1) to *all* plaintiffs whose employment had terminated after the legislature enacted the changes to *former* ORS 279.340(1) in 1995 and who had not been paid overtime compensation as required by that statute—and not, as this court had concluded, only to those plaintiffs whose employment terminated after the date of the *Young I* decision. *Young III*, 340 Or at 410. However, the Supreme Court in *Young III* did not question, much less disturb, our holding in *Young II* that plaintiffs were not entitled to prejudgment interest on their claims. The Supreme

---

[4] Finding that the pertinent wording of ORS 652.150(1) had not changed since 1995, we quoted from the then current version of the statute:

"'Except as provided in subsections (2) and (3) of this section, if an employer willfully fails to pay wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145, then, as a penalty for such nonpayment, the wages or compensation of such employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced. However, in no case shall such wages or compensation continue for more than 30 days from the due date.'"

*Young II*, 195 Or App at 40 (quoting ORS 652.150(1) (2003)).

Court again remanded the case to the trial court. 340 Or at 410.

On remand following *Young III*, plaintiffs moved the trial court for an order requiring the state "to pay interest on the revised wage payments that the State will be making to the Plaintiffs, along with penalty pay." Relying on *Lakin v. Senco Products, Inc.*, 329 Or 369, 987 P2d 476 (1999), plaintiffs asserted that they are entitled to interest accruing from the date of the original judgments (entered during 2001 and 2002) "where plaintiffs were paid at the 'half-time' rate," until plaintiffs "are paid the amounts now due as a result of the Supreme Court decision"—what, in plaintiffs' view, is properly characterized as "postjudgment" interest.

In response, the state argued that an award of interest was barred, alternatively, by sovereign immunity and by law of the case under this court's holding in *Young II* that plaintiffs are not entitled to prejudgment interest on the overtime awards. According to the state, even if sovereign immunity did not bar plaintiffs' claim, *Lakin* does not support an award of interest because the Supreme Court's reversal of the original judgments in this case had the effect of "wiping out" those judgments; consequently, interest would run only from the time the supplemental judgments fixing the new amounts in accordance with the methodology prescribed in *Young III* are entered on remand.

The trial court denied plaintiffs' motion and entered a limited judgment in favor of defendant on plaintiffs' interest claim. In a letter opinion, the court explained its ruling:

> "I have concluded that [defendant] is correct that under Oregon law there is no provision for recovery for interest on an award against the State of Oregon prior to the entry of the judgment. Since no judgment has yet been entered in this case with respect to the present issue, there can be no post judgment interest award. Both the particular procedural posture of this case at this point and the underlying rationale of sovereign immunity point to this result under Oregon law."

Plaintiffs appeal, assigning error to the court's determination that they are not entitled to interest on the revised wage payments. They argue that the trial court incorrectly

characterized their request as a claim for prejudgment interest, when, in fact, it is a request for postjudgment interest. In plaintiffs' view, that distinction is dispositive. In particular, plaintiffs concede that, if the additional award they seek is properly characterized as prejudgment interest, sovereign immunity defeats their claim—but if, as they assert, the award is properly characterized as postjudgment interest, sovereign immunity is not preclusive.

In support of their position, plaintiffs focus on the Supreme Court's holding in *Lakin* that,

" 'where a money award has been modified on appeal and the only action necessary in the trial court is compliance with the mandate of the appellate court, then the interest on the award, as modified, should run from the date of the original judgment or from the date that judgment should have been entered on a jury verdict in the lower court, as if no appeal had been taken. The only exception to this rule appears to be that if the action of the appellate court in reversing the opinion of the lower court has the effect of wiping out the original judgment, then interest should run only from the time when the amount of the new award is fixed, whether that is done directly by the appellate court or by the trial court's compliance with the appellate court's mandate.' "

329 Or at 373 (quoting *Pearson v. Schmitt*, 260 Or 607, 609, 492 P2d 269 (1971)). In plaintiffs' view, because the only action required of the trial court following the Supreme Court's remand is to recalculate the amounts in the original judgments—in their phrase, a mere "mathematical computation"—they are entitled under *Lakin* to interest from the date of the original judgments.

The state remonstrates, *inter alia*, that sovereign immunity precludes an award of interest against the state—regardless of whether it is prejudgment or postjudgment interest—unless the legislature has clearly waived that immunity. Thus, the state asserts, because plaintiffs fail to identify such a legislative waiver of the state's sovereign immunity, and neither ORS 82.010(1) nor (2)(a) contains such a waiver, the trial court properly denied plaintiffs' claim for interest. We agree with the state.

■     Plaintiffs acknowledge that *prejudgment* interest is foreclosed by our decision in *Young II.* As we explained there, under *Newport Church of the Nazarene v. Hensley*, 335 Or 1, 17, 56 P3d 386 (2002) (*Newport Church*), interest may not be awarded against the state in the absence of an express legislative authorization waiving the state's sovereign immunity, and "it is now clear that [ORS 82.010(1)[5]] does not constitute the necessary waiver of sovereign immunity." *Young II*, 195 Or App at 51. Although the narrow issue decided in *Young II* was necessarily only whether plaintiffs were precluded from obtaining prejudgment interest against the state under ORS 82.010(1), application of the principles of *Newport Church* is not so limited.

In *Newport Church,* the Supreme Court left no doubt that the payment of interest by the state, whether prejudgment or postjudgment, is precluded unless expressly authorized by the legislature. Adopting its earlier *dictum* in *Seton v. Hoyt*, 34 Or 266, 272-73, 55 P 967 (1899), the court held:

> "Interest, when not stipulated for by contract, or authorized by statute, is allowed by the courts as damages for the detention of money, or of property, or of compensation, to which the plaintiff is entitled; and, as has been settled upon grounds of public convenience, is not to be awarded against a sovereign government, *unless its consent to pay interest has been manifested by an act of the legislature,* or by a lawful contract of the executive officers. The rule applies as well to a sovereign state as to the national government."

*Newport Church,* 335 Or at 17 (internal quotation marks omitted; emphasis added).

Notwithstanding that precedent, plaintiffs do not point to any statute authorizing the payment by the state of

---

[5] ORS 82.010(1) provides:

"The rate of interest for the following transactions, if the parties have not otherwise agreed to a rate of interest, is nine percent per annum and is payable on:

"(a) All moneys after they become due; but open accounts bear interest from the date of the last item thereof.

"(b) Money received to the use of another and retained beyond a reasonable time without the owner's express or implied consent.

"(c) Money due or to become due where there is a contract to pay interest and no rate specified."

postjudgment interest on the overtime compensation required by *Young II*. Instead, both in the trial court and on appeal, plaintiffs based their asserted entitlement almost exclusively on *Lakin*. Plaintiffs may very well be correct in their assessment of *Lakin* as being generally analogous—*viz.*, as directing an award of interest based on the difference between the amount of original and post-appellate modified judgments, running from the date of the former. Nevertheless, plaintiffs' reliance on *Lakin* begs the essential predicate question: Consistently with the requirements of *Newport Church*, can interest be awarded against *the state* in these circumstances?

Plaintiffs' reliance on *Lakin* does nothing to aid them in addressing that threshold question—that is, whether the legislature has expressly waived the state's immunity from the payment of interest on awards of overtime pay under *former* ORS 279.340(1). *See Newport Church*, 335 Or at 17. The award of interest in *Lakin* arose from a purely private dispute and, specifically, pertained to a claim for personal injury and loss of consortium by an injured worker and his wife against a nail gun manufacturer. The state was not a defendant, and sovereign immunity was not an issue, in that case. Thus, *Lakin* has no bearing on the ultimately dispositive question of whether sovereign immunity precludes an award of interest—whether prejudgment or postjudgment—*against the state*.

To the extent that plaintiffs may be arguing that ORS 82.010(2)(a), the general statute providing for postjudgment interest, provides the necessary legislative authorization, that argument fails as well. That statute, on which the award in *Lakin* is based, provides:

"(2)  Except as provided in this subsection, the rate of interest on judgments for the payment of money is nine percent per annum. The following apply as described:

"(a)  Interest on a judgment under this subsection accrues from the date of the entry of the judgment unless the judgment specifies another date."

Like ORS 82.010(1)—which the court in *Newport Church* held did not effect a waiver of sovereign immunity—ORS

82.010(2)(a) is a general interest statute. It contains no language expressly authorizing an award of interest against the state. Consequently, here, as in *Newport Church*, "the state [is not] within the purview of a general law regulating the rate of interest upon money due or to become due, and this goes upon the ground that a sovereign is not bound by the words of a statute unless it is expressly named." 335 Or at 18 (internal quotation marks omitted; bracketed material in *Newport Church*).

Finally, although plaintiffs suggest, in summary fashion, that the state "waived its sovereign immunity by subjecting itself to wage and hour statutes and by having judgments entered against it," plaintiffs provide no support for that assertion. Nor do we know of any. The statutes underlying plaintiffs' award of unpaid overtime compensation make no mention of the payment of interest by the state.

In sum, regardless of the proper characterization of the additional interest recovery that plaintiffs seek, the state has not "manifested" "its consent to pay [such] interest * * * by an act of the legislature * * *." *Newport Church*, 335 Or at 17 (internal quotation marks omitted). Accordingly, sovereign immunity precludes recovery on that claim.

Affirmed.