Argued and submitted May 22, affirmed October 17, 2001

David YOUNG,
*Appellant,*

*v.*

STATE OF OREGON,
*Respondent.*

97C-10933; A110467

33 P3d 995

John Hoag argued the cause and filed the briefs for appellant. With him on the opening brief was David A. Snyder.

Mary H. Williams, Assistant Solicitor General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Wollheim, Presiding Judge, and Lent and Peterson, Senior Judges.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

Plaintiff, a salaried employee of defendant State of Oregon, brought this class action, seeking a declaration that he and other current and former state executive, administrative, supervisory, and professional employees were entitled to overtime compensation under ORS 279.340 (1995). The trial court granted the state's motion for summary judgment, and plaintiff appealed. In *Young v. State of Oregon*, 161 Or App 32, 983 P2d 1044, *rev den* 329 Or 447 (1999), we reversed, holding that state "white collar" employees were not exempt under ORS 279.342 (1995) from eligibility for overtime compensation as provided in ORS 279.340 (1995).[1]

As pertinent here, on remand to the trial court, plaintiff moved for an order certifying the class as including elected officials. By separate orders, the trial court denied the motion to include elected officials and certified the class excluding those officials. The trial court reasoned that, because elected officials' annual salaries are set by statute, the legislature could not have intended that the officials also be eligible for additional, or overtime, compensation. The trial court also reasoned that elected officials are not "labor directly employed by [a] public employer" within the meaning of ORS 279.340, because they are employed only indirectly by the state as a consequence of their election. Plaintiff initiated this interlocutory appeal of the trial court's determination in that regard. We affirm.

In this court, plaintiff asserts that the trial court erred as a matter of law in excluding elected officials from the certified class. According to plaintiff, elected officials are "labor directly employed by [a] public employer" within the meaning of ORS 279.340(1), despite the fact that they receive salaries and that their salaries are set by state statute. Plaintiff relies on the circumstances that elected officials receive various benefits in addition to their salaries, including Public

---

[1] As we explained in our first opinion in this case, plaintiff's claim is based on the 1995 versions of ORS 279.340 and ORS 279.342 and asserts entitlement to overtime compensation for the approximately two-year period during which those versions were in effect. *Young*, 161 Or App at 34 n 1. All further references to ORS 279.340, ORS 279.342, and other statutes are to the 1995 versions, unless otherwise noted.

Employee Retirement System (PERS) benefits, medical and other insurance benefits, and reimbursement for travel and other expenses and that both Bureau of Labor and Industries (BOLI) rules and federal regulations set out methods for computation of overtime compensation for persons receiving salaries.

The state responds that, consistent with the statutory construction analysis set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), the trial court correctly determined that elected officials are not state employees for the purpose of ORS 279.340(1). The state asserts that the text and context of ORS 279.340(1)—including prior versions of the overtime statute, as well as related statutes setting the salaries of elected officials—demonstrate that the legislature did not intend the overtime statute to apply to elected officials. The state also argues that, even assuming that the text and context do not answer the question, and although the legislative history is unhelpful, policy considerations relevant to the third level of statutory construction analysis support the trial court's decision. Finally, the state argues that, even if elected officials are encompassed within ORS 279.340, the trial court nevertheless properly excluded them from the class in this case because specific statutes control the compensation, fringe benefits, and other reimbursements available to elected officials and because those specific statutes must be deemed to prevail over a statute providing generally for overtime compensation for public employees.

We begin with the text and context of the relevant statutes. ORS 279.340 provided, in part:

"(1) Labor directly employed by any public employer as defined in ORS 243.650 shall be compensated, if budgeted funds for such purpose are available, for overtime worked in excess of 40 hours in any one week, at not less than one and one-half times the regular rate of such employment. If budgeted funds are not available for the payment of overtime, such overtime shall be allowed in compensatory time off at not less than time and a half for employment in excess of 40 hours in any one week."

In our earlier opinion in this case, we determined that state "white collar" employees were not exempt under ORS 279.342(5)(a) from overtime compensation as provided in ORS 279.340(1). In reaching that conclusion, we determined that, for the purpose of ORS 279.340(1), the State of Oregon is a public employer and the term "labor" means "*all* employees of a subject employer." *Young*, 161 Or App at 36. As pertinent here, however, we agree with the trial court that the question remains whether elected officials are "directly employed" by the state.

■　By its terms, neither ORS 279.340 nor any other provision setting out requirements for hours of labor by public employees, ORS 279.334 to ORS 279.342, expressly states what is meant by the phrase "directly employed" or indicates the categories of persons to whom the phrase applies. The plain meaning of the adverb "directly" is "without any intervening agency or instrumentality or determining influence : without any intermediate step." *Webster's Third New Int'l Dictionary*, 641 (unabridged ed 1993). In turn, the verb "intervene" means "to occur, fall, or come between points of time or events," *id.* at 1183, and the words "agency" and "instrumentality" mean a thing by or through which an end is achieved. *Id.* at 40, 1172. The plain meaning of the verb "employ" is "to use or engage the services of" and "to provide with a job that pays wages or a salary." *Id.* at 743. To "engage" is "to provide occupation for" or "to arrange to obtain the services of." *Id.* at 751. To "provide" is to supply or furnish. *Id.* at 1827. Based on those plain meanings, we conclude that a public employer "directly employ[s]" labor when the public employer itself, without any intermediate instrumentality or event, obtains or arranges to obtain the services of a person and thus furnishes that person for some time period with a job.

■　Applying the described interpretation of the phrase "directly employed" to elected officials, we conclude that elected officials are not "directly employed" by the state within the meaning of that phrase in ORS 279.340(1). First, although the state uses—that is, in at least one sense, "employs—the services of an elected official (and although, as an administrative matter, the state pays the official's salary out of the state treasury, *see* ORS 292.010), the state as an

entity does not itself initially obtain, or arrange to obtain, the elected official's services. Rather, the employment relationship between an elected official and the state, to the extent one exists, is achieved through the intermediate event or instrumentality of the official's election to office by the voters. *See, e.g.*, Or Const, Art IV, §§ 1, 3 (establishing Legislative Assembly and providing for election of senators and representatives); Or Const, Art V, §§ 1, 4 (establishing office and providing for election of Governor); Or Const, Art VI, § 1 (establishing offices and providing for election of Secretary of State and State Treasurer); Or Const, Art VII (Amended), § 1 (vesting judicial power of state in courts and providing for election of judges); ORS 180.010 and ORS 180.020 (establishing office and providing for election of Attorney General). The state does not itself "hire" an elected official.

In addition, a particular elected official retains his or her elective office or position by means of the same instrumentality, namely, election or other action by the voters. The voters determine, within any applicable term limits, whether or not the official is reelected to his or her office; in addition, during the term of office, the voters may recall the elected official. Thus, the state does not itself have any power to "provide" the elected official with a job or position. Equally significantly, the state itself has no power to terminate or fire the official from that position.

Related statutes support our conclusion that elected officials are not "[l]abor directly employed by [a] public employer" within the meaning of ORS 279.340(1). ORS chapter 238 provides for PERS. ORS 238.005 provides, in part:

*"For the purposes of this chapter*:

"* * * * *

"(5) The term 'employee' includes, in addition to employees, public officers * * *." (Emphasis added.)

The implication is that, apart from chapter 238, elected officials are not "employees." ORS chapter 244 sets out standards and practices for public officials. For purposes of that chapter, ORS 244.020(15) defines "public official" as "any person who, when an alleged violation of [ORS chapter 244] occurs, is serving the State of Oregon or any of its political

subdivisions * * * as an officer, employee, agent or otherwise * * *." ORS 292.010 sets out an administrative requirement—monthly or biweekly payment—for the salaries of the Governor, Secretary of State, State Treasurer, Attorney General, and "all other state officers, and all persons employed by the state" whose salary or compensation is payable out of the state treasury. *See also* ORS 292.065(1)(c) (defining "[s]tate officer or employee"). The definition of "employee" in ORS 238.005(5), the definition of "public official" in ORS 244.020(15), and the quoted portion of ORS 292.010 all suggest that the legislature regards state or public "officers," including elected officers, as being distinct from state employees. ORS 279.340(1). *See State v. Guzek*, 322 Or 245, 265, 906 P2d 272 (1995) (where the legislature uses different terms in related statutes, the court infers that it intended different meanings).

Provisions of ORS chapter 292 are significant for another reason as well. ORS 292.930 provides that specified "elective officers shall be paid an annual salary on a monthly basis as determined by the Legislative Assembly each biennium * * *." ORS 292.313 through ORS 292.425 sets out specific salaries and expense payments for the incumbents of various elective offices, including the Governor, Secretary of State, State Treasurer, Attorney General, the Superintendent of Public Instruction, the Commissioner of the Bureau of Labor and Industries, and appellate, tax, and circuit court judges. *See, e.g.*, ORS 292.313(1) (setting annual salary of Governor for 1995 to 1997 biennium at $77,500). ORS 292.430 authorizes the state Department of Administrative Services to provide various other benefits, such as retirement contributions and health insurance, to elected officials "[i]n addition to the annual salaries set forth in ORS * * * 292.313." Where the legislature expressly set out specified salary amounts and specified retirement and insurance benefits for elected officials in ORS chapter 292, it is reasonable to conclude that the legislature intended for those forms of compensation to constitute the entirety of compensation available to those persons. It did not intend other forms of compensation provided in other statutes—such as overtime compensation as provided in ORS 279.340—to apply to elected officials.

■     The context of a statute also includes prior versions of it. *State ex rel Penn v. Norblad*, 323 Or 464, 467, 918 P2d 426 (1996). In 1913, the legislature enacted a statute providing, in part, that, "[i]n all cases where labor is *employed* by the State * * * either *directly* or through another, as a contractor, no person shall be required or permitted to labor more than eight hours in any one day, or forty-eight hours in any one week." Or Laws 1913, ch 61, § 4 (emphasis added). The statute set out specified exceptions to the prohibition and provided that, in those instances, the person was to receive "double pay for the overtime." *Id*. The statute also provided that "[a]ll contractors, sub-contractors, or agents, or persons whatsoever *in authority or in charge*" who violated the prohibition "as to the hours of employment of labor" were guilty of a misdemeanor and subject to a fine. Or Laws 1913, ch 61, § 6 (emphasis added). That statute was the predecessor of current ORS 279.334, rather than of ORS 279.340, which arose out of a later amendment to it. However, to the extent that it contained the concept of a person being "directly" employed by the state or other governmental entity, we consider its effect.

■■     By its terms, the apparent purpose of the 1913 statute was to protect certain classes of employees, including those employed directly by the state, from forced overtime. In order to implement that purpose, the legislature directed a prohibition against such forced overtime to persons or entities "in authority or in charge" of such employees. However, elected officials—whose duties, functions and powers are established by the constitution or by statute—were not (and, as discussed above, are not) under the "authority" or "charge" of some other, supervisory person or entity, other than the electorate itself. To put it bluntly, no one can order an elected official to work overtime. Thus, persons protected by the 1913 statutory prohibition—including persons employed "directly" by the state—do not logically appear to have included elected officials.

In 1941, the legislature added a sentence to Oregon Laws 1913, chapter 61, section 4, providing that "[l]abor directly employed" by a local government entity was to be paid overtime compensation in the manner determined by the local government entity, subject to a minimum of time

and a half compensatory time off. Or Laws 1941, ch 345, § 1.[2] In 1953, the sentence added by the 1941 Legislature was separately codified at ORS 279.340. In 1995, the reference to various local government entities was amended to "any public employer as defined in ORS 243.650." The term "directly" in those provisions, including the 1995 version at issue here, presumably has the same meaning as the same term in the original 1913 enactment. *See PGE*, 317 Or at 611 (use of same term in related statutes implies that legislature intended same meaning). Again, by reason of its purpose and effect, Oregon Laws 1913, chapter 61, section 4, appears to have been inapplicable to elected officials. Accordingly, we again reach the same conclusion in regard to ORS 279.340.[3]

In summary, based on the text and context of ORS 279.340(1), we conclude that, although state "white collar" employees were not exempt, under ORS 279.342(5)(a), from eligibility for overtime compensation as provided in ORS 279.340(1), that category of state employees did not include elected officials. The trial court did not err in denying plaintiff's motion to include elected officials in the certified class or in certifying a class that excluded those officials.

Affirmed.

---

[2] There was no equivalent amendment relating to the manner of paying overtime to labor "directly employed" by the state.

[3] This court discussed the history of the overtime statutes in *Von Walter v. City of Canby*, 19 Or App 60, 526 P2d 599 (1974). Nothing in that opinion sheds light on the question presented here.