Argued and submitted May 18, decision of Court of Appeals reversed; judgment of circuit court reversed and case remanded to circuit court for further proceedings July 16, petition for reconsideration denied October 7, 2009

David YOUNG,
*Petitioner on Review,*

*and*

Al CHANDLER,
Mike Reinecke, Karen (Eastman) Memory, Larry D. Conn,
Leonard J. Drung, Jess Eastman, Debra E. Fery,
Bruce L. Fochtman, Lois G. Harris, Cheryl L. Ho,
Lloyd Horsley, Wilfred Hudson, Mark A. Jones,
Robert Jordan, David C. Judkins, David Kunz,
Gordan J. Larson, Margaret J. Loftis, Judy Murray,
Scott R. Proctor, Richard Reiter, Helen Satterlee,
Ernest Schmidt, Marjorie J. West, James C. Wilson,
Randal Windsor, and Michael D. Woodward,
*Petitioners on Review,*

*v.*

STATE OF OREGON,
*Respondent on Review.*

(CC 97C10933; CA A133123; SC S056376)

212 P3d 1258

John E. Hoag, Eugene, argued the cause and filed the brief for petitioners on review. With him on the petition for review was David Snyder, Portland.

Robert M. Atkinson, Senior Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were John Kroger, Attorney General, and Erika Hadlock, Acting Solicitor General.

Before De Muniz, Chief Justice, Gillette, Durham, and Walters, Justices.**

WALTERS, J.

** Balmer, Kistler, and Linder, JJ., did not participate in the consideration or decision of this case.

**WALTERS, J.**

Plaintiffs, "white-collar" state employees employed between 1995 and 1997, seek post-judgment interest on supplemental judgments entered by the trial court in response to direction from this court in *Young v. State of Oregon*, 340 Or 401, 133 P3d 915 (2006) (*Young III*), and ask that that interest accrue from the date that the original judgment was entered. In a written opinion, the Court of Appeals held that sovereign immunity absolved the state from any obligation to pay interest. *Young v. State of Oregon*, 221 Or App 146, 188 P3d 476 (2008) (*Young IV*). For the reasons that follow, we reverse.

The history of this case, which the Court of Appeals chronicled in *Young IV*, 221 Or App at 148-52, is extensive. For purposes of this opinion, it is sufficient to note that plaintiffs brought a class action in 1997, seeking to recover unpaid overtime compensation for state managerial and executive employees under *former* ORS 279.340(1) (1995), *renumbered as* ORS 653.268(1) (2003),[1] attorney fees under ORS 652.200 (1995),[2] and other relief. The trial court initially granted the state's motion for summary judgment, holding that the legislature did not intend that *former* ORS 279.340(1) apply to state managerial and executive employees. The Court of Appeals reversed. *Young v. State of Oregon*, 161 Or App 32, 983 P2d 1044, *rev den*, 329 Or 447 (1999) (*Young I*).

---

[1] *Former* ORS 279.340(1) (1995) provided:

"Labor directly employed by any public employer as defined in ORS 243.650 shall be compensated, if budgeted funds for such purpose are available, for overtime worked in excess of 40 hours in any one week, at not less than one and one-half times the regular rate of such employment. If budgeted funds are not available for the payment of overtime, such overtime shall be allowed in compensatory time off at not less than time and a half for employment in excess of 40 hours in any one week."

Unless otherwise noted, we refer to the 1995 version of the statute throughout this opinion.

[2] ORS 652.200 (1995), *amended by* Or Laws 2001, ch 279, § 1; Or Laws 2007, ch 546, § 2, provided, in part:

"(1) In any action for the collection of any * * * acknowledgment of [employer] indebtedness * * * the court shall, upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting said action * * *."

On remand, plaintiffs added a new request that "the court award pre-judgment interest on all unpaid overtime compensation from the date that it should have been paid to each [p]laintiff" to the date of the judgment. The trial court certified the case as a class action and decided in favor of plaintiffs on their wage claims but denied their requests for prejudgment interest. Over a period from March 2001 to November 2002, the court, using the "fluctuating hours" method to tabulate the wages owed, entered a series of limited judgments in favor of plaintiffs. *See* ORCP 67 B (providing for limited judgments when "no just reason for delay"); *Young v. State of Oregon*, 195 Or App 31, 39, 396 P3d 1239 (*Young II*) (explaining "fluctuating hours" method of calculation). Plaintiffs appealed from those limited judgments. In January 2003, the trial court entered a final judgment in the case as a whole, "subject only to the possibility of supplementing the ORCP 67B judgments previously entered in this case if necessary following resolution of the issues [that were then] pending on appeal." We refer to that final judgment as the original judgment.

In *Young II*, the Court of Appeals affirmed the trial court's method of calculating overtime amounts and its denial of prejudgment interest. 195 Or App at 51. On review, this court held, however, that the "fluctuating hours" method of calculation was incorrect; instead, this court ordered the calculation of overtime wages at one and one-half times the regular hourly rate of pay. *Young III*, 340 Or at 408. This court did not discuss or disturb the conclusion of the Court of Appeals that plaintiffs were not entitled to prejudgment interest, and that became the law of the case.

The case returned to the trial court for recalculation of the wages owed to plaintiffs and entry of supplemental judgments representing the difference between the amounts of the limited judgments and the higher amounts that were due to plaintiffs as a result of the calculation method prescribed by this court in *Young III*. In conjunction with entry of those supplemental judgments, plaintiffs also sought, not the prejudgment interest that the trial court had denied previously, but interest on the supplemental judgments. Plaintiffs argued that, under the rule of *Lakin v. Senco Products,*

*Inc.*, 329 Or 369, 373, 987 P2d 476 (1999) (*Lakin II*), that interest should accrue from the date of the trial court's original judgment.

The trial court denied plaintiffs' request for post-judgment interest. Plaintiffs appealed and, as noted, the Court of Appeals, in *Young IV*, affirmed that denial. Relying on *Newport Church of the Nazarene v. Hensley*, 335 Or 1, 56 P3d 386 (2002) (*Newport Church*), the court held that the state was immune from paying any interest, including post-judgment interest, unless the state's obligation was "expressly authorized by the legislature." *Young IV*, 221 Or App at 153. Plaintiffs petitioned for review.

This case presents two questions. First, is the state immune from the obligation to pay post-judgment interest? Second, if the state is not immune, did its obligation to pay post-judgment interest accrue when the trial court entered the original judgment, or did it accrue when the trial court entered the supplemental judgments?

We begin our analysis of the first question with *Newport Church*, 335 Or 1, the decision upon which the Court of Appeals based its holding. In that case, the respondent, a youth minister that the petitioner had employed, filed a claim for unemployment benefits that was allowed by the Employment Appeals Board of the Oregon Employment Department. The petitioner appealed that award, challenging its constitutionality. The respondent cross-appealed, challenging, among other things, the board's failure to award him interest on "each installment of unemployment benefits" from the date that each installment should have been paid until the date of the trial court's judgment. *See Newport Church of the Nazarene v. Hensley*, 161 Or App 12, 14, 29, 983 P2d 1072 (1999) (clarifying nature of relief sought by respondent in the case). Thus, the claim at issue in *Newport Church* was a claim for *prejudgment* interest.

In considering the state's argument that it was immune from that claim, the court cited two cases in which the plaintiffs had asserted claims for money damages against public bodies: *Rapp v. Multnomah County*, 77 Or 607, 609-10, 152 P 243 (1915), and *Hunter v. City of Eugene*, 309 Or 298, 303, 789 P2d 881 (1990). The court then discussed a case that

specifically addressed the state's liability for *prejudgment* interest, *Seton v. Hoyt*, 34 Or 266, 55 P 967, 969-71 (1899). *Newport Church*, 335 Or at 17-18.

In *Seton*, a statute required that counties (state instrumentalities) pay prejudgment interest on warrants that had been returned for nonpayment. The question was not whether the county in *Seton* was obligated to pay such interest; it clearly was. Instead, the question was whether the county was obligated to pay the statutory rate of interest as of the date that the warrants were issued or the lower rate of interest—enacted by a subsequent statutory amendment—as of the date that the warrants were presented for payment. In deciding that the county was required to pay the higher rate of interest, the court explained that those who had accepted the warrants were deemed to have agreed to await payment until the county had accumulated the funds necessary to fulfill its payment obligation. That, in the court's view, gave rise to a corresponding implied agreement by the county to pay interest during that interim period:

> "Now, if there is an implied agreement on the part of the holder of the warrant to abide the accumulation of funds in the ordinary course with which to meet the demand, the converse ought to be, and undoubtedly is, true, that there is an implied, if not an express, agreement, engendered by operation of law and the transaction of public business, which must be in conformity with its requirements, that the county will pay the legal rate of interest upon the indorsed county order. So that here is, in effect, an agreement or contract upon the part of the county to pay the legal rate of interest."

*Seton*, 34 Or at 278. The court concluded that the county's agreement precluded the state from reducing the rate of interest that the county was obligated to pay:

> "In the present case the county has become obligated by positive enactment to pay the legal rate. Parties have dealt with it upon that understanding, and when claims duly audited, which have accrued in course of business transactions with the county, are presented, and indorsed, 'Not paid for want of funds,' the law reads into the transaction a contract to pay interest thenceforth upon the warrant, and the *measure of recovery for delay in payment* is the then

existing rate of interest until paid, and subsequent legislation cannot affect or impair the obligation."

*Id.* at 281 (emphasis added).

After summarizing *Seton,* the court in *Newport Church* then decided to treat the plaintiff's claim for prejudgment interest on unemployment benefits as a claim equivalent to those that had been brought by the plaintiffs in *Rapp, Hunter,* and *Seton,* and held that, absent express legislative authorization, the state was immune from that claim. The court rejected the plaintiff's argument that ORS 82.010(1)(a), the statute that provides the rate of interest for "all monies after they become due," provided such a legislative authorization and, unable to identify any other source of authority, denied the plaintiff's claim. *Newport Church,* 335 Or at 17.

■ Understanding the basis for the court's decision in *Newport Church,* we now can frame the first question before us with more particularity: Are plaintiff's claims for post-judgment interest similar to, or distinguishable from, the claims of the plaintiffs in *Rapp, Hunter, Seton,* and *Newport Church,* and has the legislature authorized those claims?

Plaintiffs' answer is that post-judgment interest is not akin to a claim for money damages or prejudgment interest. Post-judgment interest follows as a matter of law from entry of judgment. By subjecting itself to liability for underlying claims for damages, the state expressly or by implication has consented to the consequences that flow from that liability and that attend judgment against it. Defendant responds that interest is all of a kind and that the state has not waived expressly its immunity from claims for interest of any sort. Defendant adds that consent to suit does not constitute consent to pay post-judgment interest.

A case that informs our analysis is *Griffin v. Tri-Met,* 318 Or 500, 507, 870 P2d 808 (1994). There, the question was whether attorney fees and costs awarded against a public body should be counted toward the tort claim limit in ORS 30.270(1)(b) (1985), *amended by* Or Laws 1987, ch 705, § 8; Or Laws 1987, ch 915, § 13. In answering that question in the affirmative, this court assumed that, because the public body had waived its immunity from tort action, it also had waived

its immunity from a consequential award of attorney fees and costs. The statute that granted the plaintiff a right to attorney fees and costs, *former* ORS 659.121(2) (1993), *repealed by* Or Laws 2001, ch 621, § 9, did not apply expressly to the state or its instrumentalities, and the court determined that the plaintiff's request for attorney fees and costs was separate from the underlying tort. *Id.* at 510-11. The court nevertheless concluded that the plaintiff's request was a permitted aspect of the plaintiffs' "tort claim" and therefore subject to the statutory tort claim limit. *Id.* at 507 n 6.

That ruling is consistent with this court's decision in *Newport Church* and the cases on which it relied. Although the court in those cases was loath to imply consent to suit for claims that the state had not expressly recognized, those cases do not pose a barrier to a conclusion that, when the state has submitted to liability for a claim, it is responsible for attendant money awards. Attorney fees and costs are not distinct claims for damages; rather, they flow to a prevailing party as a result of judgment in that party's favor. ORCP 68.[3]

In that respect, we do not see a substantive distinction between the state's liability for attorney fees and costs and the state's liability for post-judgment interest. Post-judgment interest also is not a distinct claim for damages. Although a plaintiff must plead a claim for prejudgment interest, a plaintiff need not plead a claim for post-judgment interest. *Lithia Lumber Co. v. Lamb*, 250 Or 444, 447, 443 P2d 647 (1968). Post-judgment interest is imposed on all judgments by operation of law. ORS 82.010(2)(a).[4] Although this court in *Newport Church* held that ORS 82.010(1), the

---

[3] Attorney fees and costs may be included in a general judgment or assessed in a separate supplemental judgment. ORCP 68 C(5). The judgment document must clearly set out in a separate section the amount of the attorney fees and costs awarded. ORS 18.042(2)(h).

[4] ORS 82.010(2)(a) provides:

"Except as provided in this subsection, the rate of interest on judgments for the payment of money is nine percent per annum. The following apply as described:

"(a) Interest on a judgment under this subsection accrues from the date of the entry of the judgment unless the judgment specifies another date."

statute that sets out the statutory rate of prejudgment interest, does not establish the state's consent to pay such interest, plaintiffs in this case do not rely solely on ORS 82.010(2)(a) as authority for their claims for post-judgment interest. Instead, they stand on the state's separate agreement to be subject to liability and to have judgment imposed for the underlying claim upon which judgment was entered. Just as the state submits to payment of statutorily required attorney fees and costs when it submits to liability, it also submits to payment of statutorily required post-judgment interest when it submits to imposition of judgment.

When the legislature waived state immunity for its torts and enacted the Oregon Tort Claims Act, it clearly assumed that the state would be liable for interest that accrued on unpaid judgments. That legislation provided that, in the event that a public body with authority to levy taxes lacks funds to pay an outstanding judgment, that body "shall * * * levy a tax sufficient to pay the judgment or settlement *and interest accruing thereon* to the expected time of payment * * *." Or Laws 1967, ch 624, § 9 (emphasis added). That provision since has been modified. ORS 30.295 now provides, in part:

> "(2) If the public body is authorized to levy taxes that could be used to satisfy a judgment or settlement within the scope of [the OTCA] and it has, by resolution, declared that [certain] conditions exist, *interest shall accrue on the judgment or settlement*, but the same shall not be due and payable until after the canvass and certification of an election upon a special tax levy for purposes of satisfying the judgment * * *[.]

> "* * * * *

> "(7)  * * * [If the judgment is to be paid in installments,] [t]he order permitting installment payments *shall provide for annual interest at the judgment rate.*"

(Emphasis added.) That statute clearly contemplates that interest will accrue on unpaid judgments against the state.

In this case, the state submitted to legal action for failure to pay overtime wages. Plaintiffs brought their wage claims under *former* ORS 279.340(1) and ORS 652.200 (1995). The latter statute, in subsection 2, provided that "the

court shall, upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal * * *." That statute did not expressly apply to the state, but judgment for attorney fees and costs was entered against the state in this case. And, indeed, when the Court of Appeals entered judgment for costs on appeal, it also assessed post-judgment interest in accordance with ORS 82.010(2)(a). *See* Appellate Judgment of January 27, 2000 (awarding costs of $437.10 and interest from date of appellate judgment). The state did not assert an immunity defense to entry of that judgment or the interest that obtained.

The state's accession to that award of post-judgment interest accords with our earlier conclusion. Having submitted to plaintiffs' action for failure to pay overtime wages, the state also is liable for interest on the judgment entered in that action.

■ The second question to which we now turn is the question of when that interest accrues. Plaintiffs seek interest on the supplemental judgments from the date of the original judgment. They argue that, because the supplemental judgments merely increased the damage awards that the trial court had entered in its original judgment of January 2003, "subject only to the possibility of supplementing [that judgment] * * * following resolution of the issues that are currently pending on appeal," interest on the "modified amount" must, under *Lakin v. Senco Products, Inc.*, 329 Or 369, 373, 987 P2d 476 (1999) (*Lakin II*), "accrue from the date of the trial court's judgment."

In the case that gave rise to *Lakin II*, the trial court had reduced a jury's verdict to impose a statutory cap on noneconomic damages. This court held that cap unconstitutional and reinstated the jury's full award. *Lakin v. Senco Products, Inc.*, 329 Or 62, 67, 987 P2d 463 (1999) (*Lakin I*). In *Lakin II*, this court subsequently concluded that the plaintiffs were entitled to interest on the increased judgment from the date of the original judgment. The court based its decision on *Pearson v. Schmitt*, 260 Or 607, 609, 492 P2d 269 (1971), in which the court stated:

"The view as now taken by a majority of states is that where a money award has been modified on appeal and the only action necessary in the trial court is compliance with the mandate of the appellate court, then the interest on the award, as modified, should run from the date of the original judgment * * *, as if no appeal had been taken. The only exception to this rule appears to be that if the action of the appellate court in reversing the opinion of the lower court has the effect of wiping out the original judgment, then interest should run only from the time when the amount of the new award is fixed * * *."

The state argues that this case falls into the exception stated in *Pearson*, *viz*., that this court's modification of the method of calculation of the overtime awards in *Young III* had the effect of "wiping out" the original judgment of the trial court. The state points out that, in *Pearson* and *Lakin II*, this court modified the trial court judgments only by replacing the amounts of the original judgments with other already ascertained amounts. In this case, by contrast, *Young III* did not require the trial court to substitute previously ascertained sums; instead, it required the trial court to recalculate the awards entirely by using a different method of computation. Thus, argues the state, it cannot be said that "the only action necessary in the trial court [was] compliance with the mandate of the appellate court." *Pearson*, 260 Or at 609.

In crafting the exception at issue, this court in *Pearson* relied on 4 ALR3d 1221, which described the prevailing rule:

"Where the action of the appellate court ultimately effecting a reduction of the amount awarded has been regarded as a *full reversal, wiping out* the original judgment or decree, the view has been taken that interest should be computed only from the entry of the new judgment in the trial court on remand."

(Emphasis added.) In that passage, the phrase "wiping out" describes the effect of a "full reversal" of the trial court's judgment. In this case, the trial court recognized in its original judgment that plaintiffs' successful appeal of the limited judgments could require a different method of calculating plaintiffs' damages that would result in an increase in their

judgments and stated that it was entering the original judgment "subject to" such supplementation. We conclude that the supplemental judgments that the trial court eventually entered in accordance with the dictates of *Young III* effected that anticipated modification of the original judgment and did not constitute a "full reversal," "wiping out" that judgment.[5] Consequently, the post-judgment interest that plaintiffs seek must, under *Lakin II*, accrue from the date of the original judgment.

In sum, we conclude that, in this case, the state is not immune from the payment of post-judgment interest and that post-judgment interest accrues from the date of the original judgment.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed and the case is remanded to the circuit court for further proceedings.

---

[5] Although Oregon courts have not addressed the issue directly, we note that other jurisdictions have reached the same conclusion regarding appellate judgments that modify the trial court's method of calculating the damages rather than merely modify the amount of the trial court judgment. *See, e.g., Lippert v. Angle*, 215 Kan 626, 628, 527 P2d 1016, 1018 (1974) (order requiring trial court to recalculate judgment based on different market value for gas royalties modified, rather than wiped out, trial court judgment); *Sintra, Inc. v. City of Seattle*, 96 Wash App 757, 763, 980 P2d 796, 800 (1999) ("Where an appellate court leaves the trial court on remand with a mere mathematical problem mandated by the appellate court, interest runs from the date of the original judgment."). In that case, the defendants had been awarded interest by the trial court on a counterclaim. On review, the appellate court noted that the defendants had failed to plead any claim of interest. Consequently, that award was "modified to strike out interest accruing prior to * * * the date the judgment was entered. Interest after [judgment was to be] computed upon the judgment rather than upon the accounts." *Id.*