IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Tobacco Tax

GLOBAL DISTRIBUTOR &         )
WHOLESALER, INC.,             )
                                       )
          Plaintiff,         )    TC-MD 101182C
                                       )
        v.                     )
                                       )
DEPARTMENT OF REVENUE,       )
State of Oregon,                )
                                       )
          Defendant.     )   **DECISION**

Plaintiff appealed Defendant's Conference Decision Letter upholding adjustments for

unpaid tobacco products taxes on "other tobacco products" during a period starting the beginning

of fourth quarter of 2006 and running through the end of the fourth quarter of 2008. Trial on the

matter was held in the Oregon Tax Court, Third Floor Conference Room, Salem, Oregon, on

October 24, 2011. Kevin Sundberg, Certified Public Accountant, appeared and testified on

behalf of Plaintiff. Soroosh "Tony" Shokohian (Shokohian), President, also testified on behalf of

Plaintiff. Defendant was represented by Joseph Laronge, Senior Assistant Attorney General.

Fred Nichol, Tax Auditor, testified on behalf of Defendant.

Plaintiff's Exhibits 1, 4, 5, 6, 7, 8, and 9 were admitted without objection. Plaintiff's

Exhibit 2 was excluded on the basis of being a written legal argument by an attorney not of

record. Plaintiff's Exhibit 3, page 101, was excluded on the basis of being written testimony.

Plaintiff's Exhibit 3, pages 3 through 9, were excluded as being irrelevant to the matter.

Defendant raised questions as to the relevancy of the remainder of Plaintiff's Exhibit 3, but the

court allowed the remaining pages.

/ / /

## I.  STATEMENT OF FACTS

Plaintiff, an Oregon corporation, is involved in the sale of flavored loose tobacco for use in a popular water pipe called a "hookah."  Shokohian characterized Plaintiff as a wholesaler. Plaintiff orders the tobacco from wholesalers in California, two of which are Starbuzz Tobacco Inc. (Starbuzz) and Fantasia Distribution Inc. (Fantasia).  Plaintiff then sells the tobacco to retailers, including smoke shops and hookah lounges, primarily in Oregon, but also in nearby states including Washington and Idaho.  Shokohian testified that he also owns his own retail establishments to which Plaintiff sometimes "sells" the tobacco.

Shokohian testified that the tobacco is grown and handpicked in Egypt, and the California wholesalers receive the tobacco straight from the source.  Shokohian testified that he orders both the tobacco and the packaging from the California wholesalers.  He testified that the tobacco is sold in 50, 100, 200 or 250-gram increments, and is shipped in foil bags.  (*See* Def's Ex A at 1-2, 70-75.)  The packaging consists of small, round, metal tin canisters (containers) and labels.  (*See, e.g.,* Ptf's Ex 6.)  Shokohian testified that he has the option of ordering the packaging (containers and/or labels) from other sources, but generally does not do so.  He testified that the tobacco and packaging typically arrives separately; he inserts individual bags of tobacco into the tin canisters, and then either prints the labels or uses third-party preprinted labels, and adheres the labels to the tin canisters.  Shokohian testified that the labeled tin canister of tobacco is the finished product that Plaintiff then sells to retailers.  He testified that he has the option of ordering the tobacco already placed into the tins, but has only once ordered the tobacco in that manner.  Shokohian testified that the tin canisters are a common, readily available item, the same type of containers bought and sold by sellers of ladies hair removal wax.

/ / /

A.   *Packaging*

In regard to Starbuzz purchases, the invoices indicate that, for a 100-gram bag of tobacco, Plaintiff generally paid one dollar for the tobacco and three dollars for the "Packaging and printing supplies." (*E.g.*, Ptf's Ex 3 at 38.)  For a 250-gram bag of tobacco, Plaintiff generally paid three dollars for the tobacco and $5.50 for the "Packaging and printing supplies," for a total of $8.50.[1]  (*E.g., id.*)  Shokohian testified that Plaintiff would then sell that product to a retailer for $14 to $15, and the retailer in turn sells to the consumer/smoker for approximately $19.99. The Fantasia invoices indicate that, for each "50 GRAM 10-pack Carton[,]" Plaintiff paid $1.50 for the tobacco and $7.50 for "Packaging." (*E.g., id*. at 87-88.)  For each "200 GRAM 6-pack Carton[,]" Plaintiff reportedly paid $3.60 for the tobacco and $18.00 for "Packaging." (*E.g., id*.) The price for packaging from Fantasia is exactly 5 times the price of the tobacco, regardless of the amount of the bag.

During trial, Defendant called into question the large disparity in price between the loose tobacco and the packaging.  Shokohian testified that "such a huge difference" is attributable to the low price of labor in Egypt, the low price of shipping, and the federal tax rate of pipe tobacco, which he contends is the "lowest in the bracket."  Shokohian testified that these factors make the tobacco "much cheaper than buying a tin can in the United States online," and therefore "the numbers don't look logical."  When asked about the possibility of the invoices being structured to lessen the tax liability, Shokohian testified that "something like that was not involved," and if that was truly the purpose, the persons involved "would have done it differently."

---

[1] The exception to the general price paid occurred when Plaintiff paid for the exclusivity agreement, which is discussed in detail below.  The November 19, 2007, Starbuzz invoice indicates a reduction of "Packaging and supplies for 100 grams flavours" to $2.50, and "Packaging and Supplies for 250 grams flavour" to $4.50. (Ptf's Ex 3 at 36.)  The court notes that the difference between these prices and the general prices equals the price paid for the exclusivity agreement.  (*Id*.)

B.    *Exclusivity and promotional agreements*

Shokohian testified that Plaintiff entered into "exclusivity agreements" with Starbuzz and Fantasia.  Both agreements were oral.  Shokohian testified that the Starbuzz agreement was made at a restaurant in Anaheim, California, and without a numerical figure.  He testified that a "one-time flat fee" was to be charged to Plaintiff "right before the first invoice."  Shokohian testified that the terms of the oral agreement were that Plaintiff "was the only company that was allowed to sell in the state of Oregon" any "tobacco products that Starbuzz sells."  An invoice dated November 1, 2007, from Starbuzz, lists an "Area Exclusivity" flat fee of $3,000.  (Ptf's Ex 3 at 34.)  A separate invoice dated November 19, 2007, lists 3,420 units of an "Area Exclusivity for 250 grams flavors" fee, priced at $1 per unit, and 816 units of an "Area Exclusivity for 100 grams flavours" fee, priced at $0.50 per unit, for a total of $3,828.  (*Id*. at 36.)  The total amount of the alleged exclusivity fee was $6,828, which is the sum of the $3000 flat fee and the $3828 unit fee discussed immediately above.

Shokohian testified that, in 2009, he discovered Starbuzz was breaching the exclusivity agreement.  He testified that he "put a stop" on the payment of a June 23, 2009, invoice, and Starbuzz subsequently sued Plaintiff.  The parties later settled, and Plaintiff submitted the "Settlement Agreement and Mutual Release" (settlement agreement) signed by Shokohian and the Treasurer of Starbuzz.  (Ptf's Ex 4.)  The settlement agreement states:

> "A.    In or around June, 2009, Starbuzz sold and delivered [Plaintiff] tobacco goods and products at [Plaintiff's] request.  The cost of the products sold to [Plaintiff] by Starbuzz under * * * the June 23, 2009 invoice totaled $33,765.

> "B.    [Plaintiff] refused pay for amounts due under the June 23, 2009 invoice.  On or about December 3, 2009, Starbuzz filed a lawsuit in the Multnomah County Circuit Court against [Plaintiff] for amounts due under the June 23, 2009 invoice. [Plaintiff] filed counterclaims claiming that * * * Starbuzz breached an exclusivity agreement for which [Plaintiff] had allegedly paid $6828.00 * * *.

"  *  *  *  *  *

"1.1    [Plaintiff] agrees to pay Starbuzz  * * * a total payment of $26,937."

(Ptf's Ex 4 at 3.)

A similar exclusivity agreement, Shokohian testified, was reached with Fantasia "sometime in 2008." Fantasia, as part of the exclusivity and promotional agreements, would refer customers wishing to purchase tobacco in Oregon to Plaintiff. (*See, e.g.,* Ptf's Ex 5 at 2.) The Fantasia invoices indicate an "Area Exclusivity Fee (Oregon, Washington)" of $4 per unit for each "50 Gram 10-pack Carton[,]" and $9 per unit for each "200 GRAM 6-pack." (*E.g.,* Ptf's Ex 3 at 87.) Shokohian testified that Plaintiff also entered into a "promotional agreement" with Fantasia that included posters, fliers, tables at conventions, menus, t-shirts, and stickers. The Fantasia invoices indicate a "Promotional Fee" of $3.50 per unit for each "50 Gram 10-pack Carton[,]" and $8.40 per unit for each "200 GRAM 6-pack." (*E.g., id.*) On some occasions, Fantasia's invoices listed exclusivity and promotional fees for units of tobacco, but did not charge Plaintiff for any actual tobacco. (*E.g., id.* at 72.) Plaintiff did not submit any documents, other than the invoices themselves, as evidence of the exclusivity and promotional agreements with Fantasia. There is a May 1, 2008, e-mail from Fantasia to Plaintiff where Fantasia is forwarding to Plaintiff an e-mail it received from an Oregon retailer requesting a catalog and price list. (Ptf's Ex 5 at 3.) Shokohian contends that the e-mail is a "referral" and demonstrates there was an exclusivity agreement with Fantasia.

C.    *Parties' positions*

Plaintiff contends that the statutory definition of "tobacco products" and "wholesale sales price" does not include any reference to packaging, and thus the only taxable items are the bags

of tobacco themselves. Plaintiff further contends that the exclusivity and promotional fees, as evidenced by the invoices and the settlement agreement, also are not included. In sum, Plaintiff contends that the packaging costs, exclusivity fees and promotional fees should not be taxed. Defendant argues that packaging is part of the "wholesale sales price," and should be included in the calculation of tobacco tax liability. Defendant calls into question the accuracy of the reporting on the invoices. Also, Defendant questions the validity and existence of the oral exclusivity and promotional agreements; Defendant contends that the settlement agreement contains no admission by Starbuzz that an exclusivity agreement existed between it and Plaintiff. For these reasons, Defendant contends that the assessments should be upheld.

## II. ANALYSIS

The issue in this case is whether three disputed items – packaging for tobacco, exclusivity agreement fees, and promotional fees – are part of the cost of tobacco, and therefore, subject to tax.

Oregon imposes a tax on the distribution of tobacco products in the state. ORS 323.505(1).[2] "The tax shall be imposed on a *distributor* at the time the distributor *distributes tobacco* products." *Id*. (emphasis added). The amount of tax imposed is "[s]ixty-five percent of the wholesale sales price of all tobacco products that are not cigars." ORS 323.505(2)(b). The tax on tobacco products (*e.g.,* cigars, snuff, and chewing tobacco) must be collected by the distributor at the time of sale and paid over to the Department of Revenue (department) at quarterly intervals each year, accompanied by a return reporting certain required sales and tax collection activities. ORS 323.505(1) (providing for the tax on the sale); ORS 323.510(1)-(2)

---

[2] The 2005 edition of the Oregon Revised Statutes (ORS) is applicable to the 2006 and 2007 quarters. The 2007 edition of the ORS is applicable to the 2008 quarters. Because the relevant statutes were unchanged between these two editions, all references to the ORS are to 2007.

(requiring submission of a return and payment of tax to the department).

The threshold question is whether Plaintiff is a "distributor" who "distribute[d] tobacco" during the time period at issue. "Distribute" and "distributor" are defined in ORS 323.500, which states, in pertinent part:

> "(6) 'Distribute" means:
>
> "(a) Bringing, or causing to be brought, into this state from without this state tobacco products for sale, storage, use or consumption;
>
> "* * * * *
>
> "(c) Shipping or transporting tobacco products to retail dealers in this state, to be sold, stored, used or consumed by those retail dealers;
>
> "(d) Storing untaxed tobacco products in this state that are intended to be for sale, use or consumption in this state; [or]
>
> "(e) Selling untaxed tobacco products in this state[.]
>
> "* * * * *
>
> "(7) 'Distributor' means:
>
> "(a) Any person engaged in the business of selling tobacco products in this state who brings, or causes to be brought, into this state from without the state any tobacco products for sale;
>
> "* * * * *
>
> "(c) Any person engaged in the business of selling tobacco products without this state who ships or transports tobacco products to retail dealers in this state, to be sold by those retail dealers;
>
> "(d) Any person, including a retail dealer, who sells untaxed tobacco products in this state[.]"

Plaintiff orders loose-leaf tobacco from a number of wholesalers in California. The tobacco is shipped to Plaintiff's warehouse in Oregon where it is stored for sale. Plaintiff then either redistributes the tobacco to various retailers, primarily in Oregon and Washington, or sells

the tobacco directly to consumers through smoke shops owned by Shokohian. Both Plaintiff and Defendant proffered evidence showing that Plaintiff brought untaxed tobacco products into Oregon and distributed those tobacco products during a period starting at the beginning of fourth quarter of 2006 and running through the end of the fourth quarter of 2008. Plaintiff is undoubtedly a "distributor" who "distribute[d]," and thus subject to taxation under ORS 323.505.

A.    *Taxability of packaging and exclusivity and promotional fees*

To address the more difficult issues, the court must determine which of the items distributed by Plaintiff are "tobacco products" considered in the calculation of tax, and the "wholesale sales price[s]" attributed to those items. ORS 323.505(2)(b). "Tobacco products" means:

> "cigars, cheroots, stogies, periques, granulated, plug cut, crimp cut, ready rubbed and other smoking tobacco, snuff, snuff flour, cavendish, plug and twist tobacco, fine-cut and other chewing tobaccos, shorts, refuse scraps, clippings, cuttings and sweepings of tobacco and other kinds and forms of tobacco, prepared in such manner as to be suitable for chewing or smoking in a pipe or otherwise, or both for chewing and smoking, but shall not include cigarettes as defined in ORS 323.010."

ORS 323.500(13).[3] "Wholesale sales price" means "the price paid for untaxed tobacco products to or on behalf of a seller by a purchaser of the untaxed tobacco products." ORS 323.500(15).

To interpret a statute, the court's goal is to discern the legislative intent. *PGE v. Bureau of Labor and Industries* (*PGE*), 317 Or 606, 610, 859 P2d 1143 (1993); ORS 174.020. The court must examine the text and context of the statute, consider legislative history, and, if necessary, look to general maxims of statutory construction. *State v. Gaines* (*Gaines*), 346 Or 160, 172, 206 P3d 1042 (2009). The court must proceed "from what the legislature has written, to what the legislature has considered, and finally, as a last resort, to what the court determines makes

---

[3] Oregon has a separate section in its tax code that applies to cigarettes. ORS 323.005 through ORS 323.482.

sense." *Young v. State*, 161 Or App 32, 37, 983 P2d 1044 (1999), *rev den* 329 Or 447 (1999), *judgment entered* 177 Or App 295, 33 P3d 995 (2001), *related proceeding* 182 Or App 210, 47 P3d 926 (2002), *appeal after rem* 189 Or App 493, 77 P3d 321 (2003), *later proceeding* 2004 Or App LEXIS 1136 (Or Ct pp, Sept 1, 2004), *reh'g granted* 338 Or 57, 107 P3d 626 (2005), *rev'd and rem'd* 340 Or 401, 133 P3d 915 (2006), *decision reached on appeal* 221 Or App 146, 188 P3d 476 (2008), *reh'g granted* 345 Or 460, 200 P3d 146 (2008), *rev'd and rem'd* 346 Or 507, 212 P3d 1258 (2009), *appeal after remand at, decision reached on appeal* 246 Or App 115, 265 P3d 32, *rev den* 351 Or 546 (2012).

"In trying to ascertain the meaning of a statutory provision, * * * the court considers rules of construction of the statutory text that bear directly on how to read the text. Some of those rules are mandated by statute, including * * * the statutory enjoinder 'not to insert what has been omitted, or to omit what has been inserted.' " *PGE*, 317 Or at 611 (quoting ORS 174.010). Additionally, "words of common usage typically should be given their plain, natural, and ordinary meaning." *Id*. (citations omitted).

Looking to the definition of "tobacco products," the statute lists numerous types and forms of tobacco, followed by the phrase "prepared in such manner as to be suitable for chewing or smoking in a pipe or otherwise[.]" ORS 323.500(13). No reference is made to packaging; packaging alone does not affect the suitability of the tobacco to be chewed or smoked in a pipe. The definition of "wholesale sales price" refers to the "price paid" for those numerous types and forms of tobacco. ORS 323.500(15). It does not refer to methods of shipping, marketing, or packaging. Because the court is not to "insert what has been omitted," there is a strong inference that the legislature did not intend to impose a tax on items other than the tobacco, such as packaging and exclusivity or promotional fees.

The inference becomes even stronger upon an examination of the context of the relevant provisions. In addition to the text, "[t]he court considers the context of the statutory provision at issue, which includes other provisions of the same statute and other related statutes." *PGE*, 317 Or at 611 (citations omitted). ORS 323.505(2)(a) states that a tax shall be imposed on the "wholesale sales price of cigars, but not to exceed 50 cents *per cigar*[.]" (Emphasis added.) ORS 323.505(4) states that "[n]o tobacco product shall be subject to the tax if the *base product* or other intermediate form thereof has previously been taxed under this section." (Emphasis added.) These provisions provide further support for the court's conclusion that the legislature intended to tax only the tobacco, not any packaging containing the tobacco. By taxing the wholesale price of cigars, "not to exceed 50 cents *per cigar*," the legislature intended to tax only the cigars themselves, not any additional packaging or containers. Also, by referring to the "base product", the court finds that the legislature anticipated a change in form or packaging.

Looking at the related cigarette tax statutes also provides proof of the legislature's intent. Oregon imposes a tax "for the distribution of *each cigarette* * * *." ORS 323.030(1) (emphasis added). Additionally, the cigarette tax provisions specifically define "[p]ackage" as "the individual package, box or other container in which retail sales or gifts of cigarettes are normally made or intended to be made." ORS 323.010(10). By defining "package" and explicitly imposing tax on the cigarettes individually, it may be inferred that Oregon legislature intended to impose a tax only on the contents of the packaging.

For these reasons, the court holds that the legislature intended to impose a tax only on the tobacco itself, not on any extraneous packaging or exclusivity fees. The amount to be taxed is determined using the wholesale sales price of the tobacco product. By way of example, suppose a distributor orders loose tobacco from a wholesaler of fine tobacco products, and also orders

lockboxes made of solid gold from another wholesaler. If the distributor then inserted the tobacco into the golden lockboxes, it would be unreasonable and onerous, and against any principle of equity, to impose a tax on the containers based upon the wholesale sales price.

B.      *Burden of proof*

The burden of proof in the Tax Court is a "preponderance" of the evidence, and falls upon the party seeking affirmative relief which, in this case, is Plaintiffs. ORS 305.427. The Oregon Supreme Court has stated that:

> " 'Preponderance' derives from the Latin word 'praeponderare,' which translates to 'outweigh, be of greater weight.' 8 Oxford English Dictionary 1289 (1933). With regard to the burden of proof or persuasion in civil actions, it is generally accepted to mean the greater weight of evidence."

*Riley Hill General Contractor, Inc. v. Tandy Corp.*, 303 Or 390, 394, 737 P2d 595 (1987). This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971) (citation omitted). In this case, Plaintiff must provide "the greater weight of evidence, the more convincing evidence[,]" of the accurate prices paid for the loose tobacco, the packaging, and the exclusivity and promotional fees separately.

1.      *Loose tobacco and packaging*

Plaintiff contends that the invoices alone provide sufficient proof of the prices separately attributable to the tobacco and packaging. The invoices are ambiguous at best. At times, Plaintiff reportedly paid five times more for the packaging than it did for the tobacco and the price of packaging differed substantially among different wholesalers. Plaintiff provided screenshots of a website for a company selling the tin canisters, but Shokohian testified that he had never ordered from that website. (*See* Ptf's Ex 6.) Plaintiff did not provide any evidence showing the typical prices paid for this type of tobacco, nor did Plaintiff provide any evidence to

bolster Shokohian's argument that the large price disparity between the tobacco and the packaging is due to the low price of labor in Egypt, the low price of shipping, and the relatively low federal tax rate of pipe tobacco. Shokohian's testimony alone is not sufficiently "convincing evidence," and the invoices themselves do nothing more than raise general doubts about the accuracy of the included values, which Shokohian admitted "don't look logical." After a close examination of the exhibits and testimony, the court concludes that the numbers indeed are not "logical." Plaintiff failed to carry its burden of proof in regard to the packaging.

2. *Exclusivity and promotional agreements*

As evidence of the exclusivity and promotional agreement with Starbuzz, Plaintiff provided a copy of a settlement agreement between the two companies. (Ptf's Ex 4 at 3-5.) Starbuzz sued for the unpaid amount shown on the invoices, and Plaintiff filed a counterclaim for breach of contract. The difference in the amount of the invoice and the settled agreement equals the amount of the exclusivity agreement as shown in the invoices and as testified by Shokohian. The court is convinced that the agreement, although initially an oral agreement, is adequately recorded in these documents. Although the court finds that Plaintiff has met its burden of proof in regard to the Starbuzz exclusivity agreement, no similar evidence was offered of any agreement with Fantasia. Plaintiff failed to carry its burden of proof of an exclusivity or promotional agreement with Fantasia.

### III. CONCLUSION

After a close examination of the exhibits, testimony, and relevant statutory provisions, the court concludes that the legislature did not intend to impose a tax on the packaging and exclusivity and promotional fees. A tax is imposed only on "tobacco products" as defined in ORS 323.500(13), and is determined using the wholesale sales price. However, Plaintiff failed

to meet its burden of proof of the actual price paid for the tobacco versus the price paid for the packaging. Plaintiff also failed to meet its burden of proof in regard to any promotional or exclusivity agreements with Fantasia, but provided sufficient proof of an agreement with Starbuzz. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the fourth quarter of 2006; first, second, and third quarters of 2007; and first, second, third, and fourth quarters of 2008, the Notices of Deficiency Assessment shall be upheld.

IT IS FURTHER DECIDED THAT for the fourth quarter of 2007, the taxable amount of Plaintiff's tobacco products purchases is $61,518.50. Defendant shall adjust its Notice of Deficiency Assessment, dated July 27, 2010, to reflect this adjustment.

Dated this ___ day of March 2012.


_____
DAN ROBINSON
MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on March 13, 2012. The Court filed and entered this document on March 13, 2012.*